WARSCO, Administrator, Respondent, vs. OSHKOSH SAV-
INGS & TRUST COMPANY, Respondent, and PUTZKE
and another, Appellants.

*April 6—May 11, 1926.*

*Homestead: Acquisition with trust funds: Lien of owner of funds
on homestead.*

1. Where defendant and her husband, with full knowledge of the facts, invested a trust fund in their homestead, they became constructive trustees, and the homestead was properly subjected to a lien whether the fund was used to purchase or improve the property. p. 89.
2. The defendants having admitted on the trial that the trust fund had been invested in their homestead, the refusal of the court to modify the judgment imposing a lien on the homestead for such amount on an application alleging that only a part of the fund was invested in the homestead is *held* not an abuse of discretion. p. 96.

APPEAL from a judgment and an order of the circuit court for Winnebago county: FRED BEGLINGER, Circuit Judge. *Affirmed.*

The appeal is by the defendants *Putzke* from a judgment for the sum of $2,233.93, and imposing a lien to the extent of $2,000 upon certain real estate claimed by said *Putzkes* as their homestead.

For the appellants there was a brief by *Martin, Martin, Martin, Clifford & McHale* of Green Bay, and oral argument by *Gerald F. Clifford.*

For the respondent *Oshkosh Savings & Trust Company* there was a brief by *Weed & Hollister* of Oshkosh,. and oral argument by *H. I. Weed.*

For the respondent *Warsco* the cause was submitted on the brief of *Cady, Strehlow & Kaftan* of Green Bay.

DOERFLER, J. This case came before this court on appeal, and the decision therein will be found in 183 Wis. 156, 196 N. W. 829. A reference to the opinion discloses that the trust agreement therein referred to was held void. After the original hearing in the trial court the defendant *Oshkosh Savings & Trust Company,* being of the opinion that the alleged trust was valid, turned over to *Dora E. Putzke* the trust property (with the exception of certain sums expended and paid out by it), out of which amount she invested the sum of $2,000 in a homestead, title to which was held in the name of the defendant *Otto E. Putzke,* her husband. When the cause reached the trial court after the decision in this court, a hearing was had, and the court made and filed findings, among which are the following:

"That out of the fund so received by her, the defendant *Dora E. Putzke,* with the knowledge, consent, and concurrence of her husband, the defendant *Otto E. Putzke,* invested the sum of $2,000 in the house and lot and real estate in the city of Oshkosh, Winnebago county, Wisconsin, described as follows, to wit: [Here follows the description of the property.] That the title to said above described real estate now is in the defendant *Otto E. Putzke,* . . . the husband of the defendant *Dora E. Putzke.*"

It is the contention of the defendant *Putzke* and wife that the trial court erred in finding and adjudging a lien upon the real estate above referred to, because such real estate constituted the homestead of said *Putzke* and wife. On the other hand, the plaintiff and the defendant *Oshkosh Savings & Trust Company* take the position that the sum of $2,000 so invested in the homestead constitutes trust property; and inasmuch as it was invested in the homestead and is clearly traceable, the lien was legally imposed.

Sec. 272.20 of the Statutes, formerly sec. 2983, which defines a homestead and declares its exemption, among other things provides:

"A homestead to be selected by the owner thereof consisting, when not included in any city or village, of any quantity of land, not exceeding forty acres, used for agricultural purposes; and when included in any city or village of any quantity of land not exceeding one fourth of an acre and the dwelling house thereon and its appurtenances owned and occupied by any resident of this state shall be exempt from seizure or sale on execution, from the lien of every judgment and from liability in any form for the debts of such owner to the amount in value of five thousand dollars, except laborers', mechanics' and purchase-money liens and mortgages lawfully executed, and taxes lawfully assessed and except as otherwise provided in these statutes."

It is claimed by counsel for the *Putzkes* that the real estate above referred to was an existing and established homestead before the sum of $2,000 was invested therein, and that the $2,000 did not form a part of the purchase price of the property. In other words, it is claimed that the moneys derived from this alleged trust were expended in improvements upon a homestead which had been previously established and maintained. It appears to us that whether the money was actually used in the purchase of a homestead, or whether it was devoted to improvements thereon, can be of no consequence in determining the issue herein involved, so long as the moneys so expended were trust funds. *Dora E. Putzke* at the time she received this fund from the *Trust Company* was fully cognizant of all the facts pertaining to this alleged trust, and from the undisputed evidence in the case the court found that *Otto E. Putzke* was also possessed of like knowledge. Both *Mrs. Putzke* and her husband, therefore, with full knowledge of the facts, received the money and invested it in the manner above indicated. They therefore became constructive trustees, and could hold the

trust fund solely for those who were legally entitled there-
to. This money could not be expended for their individual
purposes or to promote their personal welfare, and any such
expenditure constituted a wrongful act, for which they can
be held liable to the same extent as a trustee under a valid
express trust.

In 3 Pomeroy, Eq. Jur. (4th ed.) 2397–2401, it is said:

"*A constructive trust arises whenever another's property
has been wrongfully appropriated and converted into a dif-
ferent form.* If one person having money or any kind of
property belonging to another in his hands wrongfully uses
it for the purchase of lands, taking the title in his own name;
or if a trustee or other fiduciary person wrongfully converts
the trust fund into a different species of property, taking to
himself the title; or if an agent or bailee wrongfully dis-
poses of his principal's securities, and with the proceeds pur-
chases other securities in his own name,—*in these and all
similar cases equity impresses a constructive trust upon the
new form or species of property, not only while it is in the
hands of the original wrong-doer, but as long as it can be
followed and identified in whosesoever hands it may come,*
except into those of a *bona fide* purchaser for value and
without notice; *and the court will enforce the constructive
trust for the benefit of the beneficial owner or original cestui
que trust who has thus been defrauded.* As a necessary con-
sequence of this doctrine, whenever property subject to a
trust is wrongfully sold and transferred to a *bona fide* pur-
chaser, so that it is freed from the trust, the trust immedi-
ately attaches to the price or proceeds in the hands ·of the
vendor, whether such price be a debt yet unpaid due from
the purchaser, or a different kind of property taken in ex-
change, or even a sum of money paid to the vendor, as long
as the money can be identified and reached in his hands or
under his control. *It is not essential for the application of
this doctrine that an actual trust or fiduciary relation should
exist between the original wrong-doer and the beneficial
owner. Wherever one person has wrongfully taken the
property of another and converted it into a new form, or
transferred it, the trust arises and follows the property or its
proceeds.*" (Italics ours.)

Warsco v. Oshkosh S. & T. Co. 190 Wis. 87.

It appears to us that the foregoing quotation from Pomeroy not only constitutes good logic but sound law. The court rightly declared a lien upon the property for the amount of the trust fund actually used either in the purchase or in the improvement of the property. 2 Perry, Trusts (5th ed.) p. 528.

The language of sec. 272.20 of the Statutes must be conceded as broad and inclusive. It exempts the homestead from the lien of every judgment and from liability in any form for the debts of such owner to the amount in value of $5,000, excepting only laborers', mechanics', and purchase-money liens, and mortgages lawfully executed, and taxes lawfully assessed. Counsel for the *Putzkes* contend that the word "debts" was not confined by the legislature to contract obligations, but included obligations arising out of torts, and that among such tort obligations are such as result from the unlawful conversion of trust property, and in support of this contention the case of *Smith v. Omans,* 17 Wis. 395, is cited. In that case one Richards obtained a judgment against the defendant for damages in an assault and battery case. An execution was levied against the property of the defendant, which at the time constituted his homestead, and the property was sold to the plaintiff on an execution sale. The lower court awarded possession of the property to the plaintiff. Upon appeal this court in its opinion, rendered by Mr. Justice PAINE, said:

"The only question which it is necessary to determine in this case is whether the homestead of the judgment debtor is liable to forced sale on execution where the judgment was rendered in an action of tort." The opinion continues by saying: "We are fully satisfied that it is not, but that the spirit and object, as well as the letter, of our constitutional and statutory provisions on that subject, exempt the homestead from sale on a judgment in any civil action. . . . And although there may be a technical distinction between 'debt' and 'damages,' still the word 'debt' itself is commonly and generally used to describe all obligations to pay money,

whether arising from contract or imposed by law as a compensation for injuries. And in this general sense the word was evidently used in this statute, and the word 'contracted' does not mean founded upon a contract, but it was used in its more general sense as equivalent to 'incurred.' "

The language of the opinion is evidently broad, and in fact broader than was necessary in the decision of that case. When a tort judgment is entered, as in the *Smith Case,* it is not unlike a judgment based on contract. It becomes a lien upon all the property of the debtor excepting the homestead, but, in addition to the ordinary remedies awarded a mere judgment debtor on contract, he is afforded an execution against the body.

The decision in the *Smith Case* is in harmony with the great weight of authority outside of Wisconsin, and unquestionably is the law of this state. The learned counsel for the *Putzkes,* however, have evidently overlooked an important distinction between the judgment in that case and the one entered in the instant case. In the *Smith Case* the judgment was not based upon a conversion of trust funds. It was merely a judgment in tort. In the instant case the judgment was also one in tort, and if it had stopped there it might properly have been contended that the law in the *Smith Case* would control, and that such judgment would not be enforceable as against the homestead of the *Putzkes.* In the instant case, however, the judgment was based upon a conversion of trust funds. The funds were traced directly into the homestead, and therefore, under the doctrine contained in the above quotation from Pomeroy and the one supported by Perry on Trusts, the court, in the exercise of its equitable powers, imposed a lien upon the homestead for the amount of the traced trust funds. See, also, *Gunn v. Blair,* 9 Wis. 352; *Hill v. True,* 104 Wis. 294, 80 N. W. 462; *Boyle v. Northwestern Nat. Bank,* 125 Wis. 498, 103 N. W. 1123, 104 N. W. 917; *Whalen v. Schumacher,* 176 Wis. 441, 187 N. W. 169.

Warsco v. Oshkosh S. & T. Co. 190 Wis. 87.

"The whole theory of the law with relation to homesteads is based upon the idea that as a matter of public policy, for the promotion of the prosperity of the state, and to render independent and above want each citizen of the government, it is proper he should have a home where his family may be sheltered, and live beyond the reach of financial misfortune and the demands of creditors who have given credit under such law. It is intended to secure to the householder a home for himself and family, regardless of his financial condition, whether solvent or insolvent, without reference to the number of his creditors. . . ." 13 Ruling Case Law, 543, 544.

In all of the statutes affecting the homestead rights and in the decisions construing such statutes, the public policy of the state becomes manifest, and such policy consists in the protection of the owner and his family in the enjoyment of those rights which the state has deemed advisable to promote the public good and the general welfare. Such protection extends not only to the owner of the homestead, but to his wife and family, and it shelters them in the event of financial embarrassment, whether such embarrassment results from improvidence or from torts committed by the owner. "The homes of a nation are the bulwarks of personal and national safety and thrift." "Home is the chief school of human virtue. Its responsibilities, joys, sorrows, smiles, tears, hopes, and solicitudes form the chief interest of human life." The homestead is the place where the home is maintained, where the family resides, and where the children are reared, and the home is considered a hallowed spot. It is true that the owner of a home may be insolvent; he may establish such home from moneys borrowed from others; he may pay for the home with non-exempt property; he may even hold and maintain such home free from judgment creditors on contract and in tort; and this he is enabled to do under the existing law on account of the importance of a homestead to the government; but it was never contemplated nor intended that a homestead shall be created

and maintained with stolen or embezzled property, or by the wrongful appropriation of property rightly belonging to others. If this were so, the statute exempting a homestead, instead of promoting the public welfare, would operate as an immoral and baneful influence, undermining and destroying the fundamental principles of government. A home established from the proceeds of crime or from a misappropriation of the property of others, where the proceeds of such wrongful acts are traceable to the homestead, if held exempt would act as a demoralizing and debasing example for the young and would exert an influence upon coming generations detrimental to the future welfare of society.

But it is further argued by the learned counsel for the *Putzkes* that, in addition to the heads of the family, the children are also interested, and that they are innocent of any wrong-doing; that to deprive them of the exemption provided by the statute would visit upon them a consequence which is not contemplated by the spirit of the law. There is some force to this argument, but it is not persuasive. The husband and father generally occupies the position of head of the family. Ordinarily the wife and children look to him for maintenance and support, and under the law he is obliged to furnish both. Usually he is the creator and maintainer of the homestead, but is not necessarily so in all cases. However, when he has once established a homestead he may select another, and the wife and children, if they desire that the family relations be continued, must follow him. The new homestead may be of little value compared with the old. It may afford but little shelter or protection to the wife and family. He may permit the dwelling house to crumble with age, or he may improvidently allow it to fall into such a condition of repair as to leave it a home merely in name. He may improvidently construct such additions and make such alterations as to endanger its stability by mechanics' liens. The wife may join the husband in mort-

gaging the home to such an extent as to diminish the equity beyond the power of redemption, and the owner of the homestead may do many other things which may result disastrously to the welfare of the children; and in all the cases above enumerated the family is practically remediless. So that it may be said as a general proposition, that whether the established home is or is not such a place as will best promote the social or governmental welfare is dependent, at least to a large extent, upon the ability and the action or non-action of the owner of the home. From what has heretofore been said, it follows as a corollary that if the owner of the home sees fit to invest therein the proceeds of crime and of fraud, the homestead rights will not be protected to the extent that such proceeds can be traced into the homestead, even though the wrongful and unlawful acts of the owner may tend to disastrously affect innocent parties like the children.

In the case of *Truelsch v. Miller*, 186 Wis. 239, 202 N. W. 352, where embezzled moneys had been used by the husband in paying insurance premiums upon a life insurance policy in which the wife was appointed the beneficiary, it was claimed, under the provisions of sec. 2347 of the Statutes, that the policy became vested in the plaintiff and became her sole and separate property, free from any trust or incumbrance. This court said, Mr. Justice JONES rendering the opinion:

"It would be a signal failure of justice if one who has become a constructive trustee by reason of wrongfully receiving or securing the property of another could escape the consequences of his acts by changing the form of the property thus acquired. Hence as between him and the *cestui que trust*, the latter may pursue the funds into the new investment and charge that investment with the trust. He may also assert and enforce the same right against third parties to whom the property has been transferred with knowledge of the trust or who have paid no consideration for it, provided the identity of the trust fund can be estab-

lished.   In this case, if the premiums were paid from funds stolen or embezzled from the appellant, each policy became impressed with a trust in the appellant's favor the instant each premium was paid. . . . The statutes guarding the rights of married women in insurance policies and homesteads are beneficent statutes, which are liberally construed in their behalf; but they are not designed to encourage fraud or to make such property a safe depository for stolen funds."

Where a policy is made payable to a married woman, without reservations, the language of the statute giving her a vested interest is quite as strong and effective as is the homestead statute.   And yet in the *Truelsch Case* it is made clearly to appear that stolen or embezzled funds cannot be used to pay the premiums without creating a trust as against such policy, or the proceeds thereof, for the amount of the funds so invested.

On the trial of the action both *Putzke* and his wife unqualifiedly admitted that the sum of $2,000 received from the *Trust Company* had been invested in the homestead. An application was thereafter made by the *Putzkes,* based upon affidavits, to vacate or modify that portion of the judgment in so far as it gave a lien upon the defendants' homestead, for the reason that only a part of the $2,000 was invested in the homestead.   In view of the definite and deliberate admissions of both of the *Putzkes,* we cannot say that the court abused its discretion or its power by refusing to modify such judgment.

*By the Court.*—The judgment and order appealed from are affirmed.