WOLF, Respondent, vs. JEBE, imp., Administratrix, Appellant.

*March 10—April 13, 1943.*

For the appellant there was a brief by *Williams & Williams* of Oshkosh, and oral argument by *Eugene Williams*.

For the respondent there was a brief by *Benton, Bosser, Becker & Parnell,* attorneys, and *Arthur P. Remley* and *David L. Fulton* of counsel, all of Appleton, and oral argument by *Mr. Fulton*.

FRITZ, J.  The facts material on this appeal are as follows. In March, 1927, Ferdinand H. Jebe and the plaintiff, Ruth Wolf, were married and lived together as husband and wife. He was a teacher in the public schools of Oshkosh and on June 28, 1927, filed, under sec. 42.50 (1), Stats., with the state Public School Retirement Board, his affidavit and notice designating Ruth Wolf as the beneficiary to whom to pay, in the event of his death, the death benefit payable under the Teachers' Retirement Act, ch. 42, Stats.  No change of the beneficiary was ever made by Jebe giving a written notice thereof to the Retirement Board as required under sec. 42.50 (1), Stats.  On November 8, 1928, judgment of divorce was entered between plaintiff and Jebe.  Up to that time there had been deposited in the teachers' retirement fund $213.30 by him and $100.26 by the state.  The judgment of divorce provided, pursuant to a stipulation between the parties for a final division of property, that plaintiff was to have cer-

tain items of personal property in addition to $600, which were to be paid by Jebe and for which she was to have a lien on the interest in land purchased by them under a land contract; and that—

"the title to the remaining property of the defendant, real and personal, of whatsoever kind or nature be and hereby is vested absolutely in said defendant, free from all claim of the plaintiff thereon of any nature. That upon payment to the plaintiff by the defendant of said six hundred dollars ($600), the plaintiff . . . shall release the defendant from any and all claims that she may have."

There is no mention whatever in the stipulation or judgment of the teachers' retirement fund or the benefits payable under ch. 42, Stats. Thereafter Ruth Wolf was twice remarried and divorced to the knowledge of Jebe. He, on July 25, 1931, married the defendant herein, Grace S. Jebe, who continued to be his wife until his death, intestate, in 1941, and she was then appointed and is still the administratrix of his estate.

In relation to the designating and to changing the designation of the beneficiary to whom a death benefit shall be paid upon the decease of a member, the applicable provisions in sec. 42.50 (1), Stats., read as follows:

"Any member may, by written notice to the retirement board having jurisdiction, in such form as it shall approve, designate any person or persons having an insurable interest in the life of the member as a beneficiary to whom any death benefit payable at the death of the member shall be paid. The member may, from time to time, by a like written notice, change the beneficiary. If no beneficiary shall have been named by the member such death benefit shall be payable to the estate of the member."

The appellant, Grace S. Jebe, contends that those provisions do not compel in all cases payment to the designated beneficiary; that the method set out in the statute for terminating

the interest of a designated beneficiary is not exclusive; that such termination may be effected by either a change of beneficiary in writing, as provided by the statute, or by the death, divorce, or termination of the insurable interest of the beneficiary; and that the stipulation and judgment in the divorce action on November 8, 1928, estop Ruth Wolf from receiving payment of the benefit in question.

Those contentions cannot be sustained in so far as the termination claimed by appellant is based on the stipulation and judgment in the divorce action, which is the only basis involved herein. The language used by the legislature in sec. 42.50 (1), Stats., is simple and unambiguous and clearly and definitely prescribes the manner in which a member may designate and change the designation of the beneficiary to whom the death benefit shall be payable. The sole manner authorized is that "any *member* may, *by written notice to* the *retirement board* having jurisdiction, in such form as it shall approve, *designate* any person or persons *having an insurable interest* in the life of the member *as a beneficiary*. . . ." And that "the *member* may, from time to time, *by a like written notice, change* the beneficiary." Likewise, as the only description prescribed to constitute the person designated eligible as a beneficiary is that the member may designate "any person or persons *having* an insurable interest in the life of the member as a beneficiary," the clear and obvious meaning of this simple and unambiguous language is that the person designated must have such an insurable interest at the time such designation is made by the member giving his written notice to the Retirement Board. Although the statute requires that the person designated must have such insurable interest then, there is no provision therein which can be deemed to require that the designated beneficiary must continue to have such insurable interest until the death of the member, or that merely the prior cessation of such interest during the lifetime of the beneficiary shall automatically work a change of beneficiary.

As the statute expressly specifies how a beneficiary may be changed, *i. e.,* "by a like written notice" by the member to the board, and is wholly silent as to any other manner by which the designated beneficiary may be changed by a member, or as to any circumstances because of which a change can be held to have been effected, none can be implied or interpolated without disregarding the clear meaning of the express language used in sec. 42.50 (1), Stats.

As that language in substance and effect is similar to language which is neither obscure nor ambiguous as used in provisions in fraternal insurance certificates or by-laws to prescribe the mode of changing the designated beneficiary, there is applicable thereto whether used in the statute, such certificates or by-laws, the statement in *McGowan v. Independent Order of Foresters,* 104 Wis. 173, 180, 80 N. W. 603, that,—

"It is now well settled that one who is insured in a mutual benefit association, and who wishes to change the beneficiary, must make the change in the manner required by his policy and the rules of the association, and that any material deviation from this course will render the attempted change ineffective."

In applying this rule in *Faubel v. Eckhart,* 151 Wis. 155, 138 N. W. 615, in holding that the named beneficiaries under a fraternal benefit policy were entitled to take the death benefit as against those whom the insured had agreed to name,— although he had made an express contract for a consideration to name them by changing the beneficiaries, but died without complying with the requirement in the association's by-laws, that a change of beneficiary might be effected by returning the original certificate with the request for change indorsed thereon,—this court said,—

"The rule of law which requires, outside of the exceptions noted in *McGowan v. Independent Order of Foresters,* 104 Wis. 173, 80 N. W. 603, the change of beneficiary to be made

conformably to the requirements of the policy and the by-laws and constitution of the benefit association, is simple, consistent, and easily understood and applied. It will diminish the occasions for family quarrels and the temptation to perjury in making proof of oral and comparatively secret agreements to change beneficiaries. The equities in the instant case, as is well remarked by the learned circuit judge, are with the respondents. But equity follows the law in such case, and wisdom, we think, forbids the engrafting of subtle and numerous exceptions upon the rule that, generally speaking, the power to change the beneficiary must be exercised conformably to the regulations of the insurer. There was in this case no change of beneficiary shown, only an agreement based upon a consideration to transfer the policy or to make such change." (p. 161.)

"There is in all these cases a recognition of the right on the part of either the insurer or the beneficiary to insist that in order to be valid the change of beneficiary must ordinarily be made conformably to the stipulations of the policy and the rules of the association, except in the three instances mentioned in *McGowan v. Independent Order of Foresters, supra.* This is in accord with the weight of authority. 1 Bacon, Ben. Soc. (3d ed.) sec. 307." (p. 159.)

See also *Berg v. Damkoehler,* 112 Wis. 587, 88 N. W. 606; *Seffens v. Carisch,* 190 Wis. 144, 208 N. W. 905.

In accord with the above-stated rule and the reasons therefor, it has been held likewise that when no change in the designation of the beneficiary is actually made during the lifetime of the member in the manner prescribed by the policy, by-laws, or a statute, no change is effected by virtue of the termination of the insurable interest of the named beneficiary as the result of divorce. In *Bowers v. Missouri Mutual Asso.* 333 Mo. 492, 507, 62 S. W. (2d) 1058, 1064, the court, as in the instant case, was confronted with the construction of a statute requiring that the named beneficiary have an insurable interest, the court said:

"The statute says that a policy shall not be issued upon any life in which the beneficiary named has no insurable interest. It says nothing about the cessation of the insurance if such

insurable interest existed when the policy was issued but has ceased to exist when the death of the insured occurs. Appellant has not set out all of its by-laws in its abstract. In the portions set out and in the application and policy nothing is said about who may be insured or named as beneficiaries or to the effect that the insurance shall terminate if the beneficiary shall, after the issuance of the policy, cease to have an insurable interest in the life of the insured. . . . The general rule is that 'a policy of life insurance, or a designation of beneficiary, valid in its inception, remains so, although the insurable interest, or relationship of the beneficiary has ceased, unless it is otherwise stipulated in the contract.' [Citing cases.] Under the pleadings and proof in this case we think that rule applies. We hold that the contract in question was valid in its inception and remained so notwithstanding the subsequent divorce."

In *Brown v. Grand Lodge*, 208 Pa. 101, 103, 104, 57 Atl. 176, the insured under a policy of a mutual benefit association had designated his then wife as beneficiary. They were divorced thereafter, and the husband remarried but made no change of the beneficiary. It was contended that since the divorced wife did not belong to one of the specified permissible classes at the time of the insured's death, she could not take under the provision in the policy that,—

"Each member shall designate the person or persons to whom the beneficiary fund due at his death shall be paid, who shall, in every instance, be one or more members of his family or someone related to him by blood, or shall be dependent upon him."

This contention was not sustained by the court, which said :

"A member may designate as a beneficiary one of three classes : A member of his family, one related to him by blood, or one dependent upon him. Pursuant to this designation, the beneficiary is named in the certificate as the party entitled to the sum for which the life of the member is insured. As suggested above, the member may withdraw this designation

and substitute as a beneficiary another person within one of the specified classes; or if the beneficiary die prior to the death of the member, the fund will go to the other persons designated by the laws of the association. But unless such substitution is made, or the death of the beneficiary occurs within the specified time, there is no provision in the constitution or by-laws of this organization that nullifies or renders inoperative the designation of the beneficiary, in the original certificate. The date of eligibility as a beneficiary is the date of the designation in the certificate, and not the date of the death of the member. If, therefore, the plaintiff was eligible as a beneficiary at the time she was designated as such, there is nothing in the charter of the organization to deprive her of the rights, though then expectant and not fixed, acquired by her under the contract evidenced by the certificate. It should be observed, and it is important to keep in view the fact that the laws of this association do not require the beneficiary to belong to one of the specified classes at the death of the member when the rights of the beneficiary become vested."

In *Schmidt v. Hauer,* 139 Iowa, 531, 535, 111 N. W. 966, the constitution of a benefit society required that a beneficiary "be one or more members of his family or . . . related to . . . or dependent on him." The wife was named as beneficiary; the parties were thereafter divorced; and the insured died without exercising his right under the policy to change the beneficiary. The divorced wife was held entitled to the death benefit. The court said:

"the provision . . . goes no farther than to warn the member in advance that in making his selection he must designate a person coming within some one of the favored class specified; that, otherwise, the beneficiary designated by him will not be recognized when time for recognition comes. . . . The beneficiary named, properly so in the beginning who has been allowed to stand in such ostensible relation by the member, although he might have brought about a change on his own initiative had he so desired, is entitled to be regarded as the promisee. What, then, is there in the contract to imply an intention of the parties that a change of status in relationship

should of itself, *eo instante,* and inexorably, work a change in the beneficiary from the person named to the heirs of the member, no other proper person being subsequently substituted?" (The court found nothing.)

Likewise to the effect that a subsequent change in the status of the named beneficiary having an insurable interest does not terminate the right of such beneficiary to the death benefit, see *Overhiser v. Overhiser,* 14 Colo. App. 1, 59 Pac. 75; *White v. Brotherhood of American Yeomen,* 124 Iowa, 293, 99 N. W. 1071; *Ancient Order of Hibernians v. Mahon,* 221 Mich. 213, 190 N. W. 696; *Teed v. Brotherhood of American Yeomen,* 111 Wash. 367, 190 Pac. 1005; *Farra v. Braman,* 171 Ind. 529, 86 N. E. 843; 29 Am. Jur. p. 311, sec. 354.

Although it was held in *Will of Battis,* 143 Wis. 234, 240, 126 N. W. 9, that changes in the status and circumstances of a testator brought about subsequent to making his will by an adjudication of divorce and final division of his estate between him and his wife "are of [such] nature and, in effect, of such probative force as to imply that the testator intended that the testamentary provisions theretofore made for [his] wife should become revoked thereby," that decision affords no precedent in the case at bar. The conclusion that the revocation of the will could be implied by reason of the changed marital status and property conditions as the result of the subsequent divorce judgment was based upon and warranted solely by the express exception in sec. 238.14, Stats., which, in connection with providing that no will shall be revoked unless by the manner therein provided with the intention of revoking it, further provides, "excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." The exception stated in sec. 238.14, Stats., relating to "Wills, how revoked" is obviously applicable and operative solely in the case of a will. Neither its

terms nor its context in the statutes admit of its application to such clear and definite provisions, prescribing the manner of designating or of changing the designation of a beneficiary, as are in sec. 42.50 (1), Stats., and the certificates of insurance and by-laws involved in the cases cited above.

Neither is there any basis for an estoppel, because of which Ruth Wolf can be held not entitled to the death benefit in question, afforded by the divorce stipulation and judgment, in which there is no mention whatever of the teachers' retirement fund or the benefits payable under ch. 42, Stats., although appellant claims that at the time of the divorce Ferdinand H. Jebe had a definite interest in the annuity fund because of his contribution of $213.30 and the state's deposit of $100.26. By that stipulation and judgment all rights, interests, or claims which plaintiff had in or to any of Jebe's property, and any claim which might arise in the future against him or his property, were then released and terminated; and that included barring plaintiff from having any right, interest, or claim in or to such right or property interest as he had in his contributions and deposits by the state for the annuity fund at the time of the divorce judgment and thereafter, including his right to withdrawals from the fund under sec. 42.49, Stats. However, plaintiff in seeking herein to recover the death benefit payable upon the decease of Jebe, under sec. 42.50 (1), Stats.,—which by reason of his unchanged notice designating her as the beneficiary, in the manner prescribed by that statute, she is entitled to have paid to her,—is not seeking to recover any property which he had or which was part of his estate upon his death, or in which his estate or any person other than Ruth Wolf has or can be deemed to have acquired any right or interest in the absence of the giving of any written notice by him to the Retirement Board as required by sec. 42.50 (1), Stats., in order to effectively change the beneficiary. At the time of the stipulation and judgment in the divorce case and until the death of

Ferdinand H. Jebe without having changed the beneficiary, plaintiff as the beneficiary designated under sec. 42.50 (1), Stats., had neither "property" nor an interest or claim which was enforceable by her. There was but a mere expectancy which was subject to being terminated and defeated at the absolute will of Ferdinand H. Jebe at any time. As the court said in *Sandrosky v. Prudential Ins. Co.* 217 Cal. 578, 580, 20 Pac. (2d) 325, in holding that the wife,—designated as the beneficiary under a policy on her husband's life, which he failed to have changed upon a subsequent divorce,—was entitled to the proceeds of the policy as against the personal representative of the deceased husband, notwithstanding the divorce and a stipulation for division of property and transfer to him of all right, title, or interest which she then had or may thereafter acquire in any property now owned or thereafter acquired by him,—

"If it be conceded that the terms of the property settlement were broad enough to transmute the community rights of the parties in the policy of insurance into separate property of the deceased, still that concession would not conclude this controversy for such a conveyance would not affect the wife's status as the beneficiary. Such a right, standing alone, is no more than an expectancy; it is not a property right and, therefore, it is not the subject of settlement. The beneficiary could be changed at any time at the will of the insured."

To the same effect see *Mayfield v. Fidelity & Casualty Co.* 16 Cal. App. (2d) 611, 61 Pac. (2d) 83; *Andrews v. Andrews* (8th Cir.), 97 Fed. (2d) 485; *Tromp v. National Reserve Life Ins. Co.* 143 Kan. 98, 53 Pac. (2d) 831. As no law or legal obligation required Jebe to name plaintiff as the beneficiary in the first instance, or to retain her as beneficiary during the period of their married life, or after their divorce, no agreement or adjudication was needed to vest or confirm in him his right to change the beneficiary or have the death benefit made payable to his estate; and none could have added to the

rights which he already possessed. And as plaintiff, as the beneficiary designated under sec. 42.50 (1), Stats., had no "property" in the fund that she could transfer, and no right or claim which had to be released to him, there was nothing which there was occasion to consider the subject of a stipulation or judgment. The evident purpose to enable the husband to deal freely and without possibility of hindrance by the plaintiff with all of his property, not specifically set off to her, was, fully accomplished by the stipulation and judgment as written; and for nearly thirteen years thereafter he clearly had the absolute and unqualified right to make a change of beneficiary, but either neglected or chose not to exercise this right or to refrain, as was equally within his power, from so doing. It follows that the stipulation and divorce judgment were wholly without effect upon plaintiff's expectancy as beneficiary; and as there was no conduct, representation, or agreement on her part which can be deemed to have caused the decedent to refrain from revoking her designation as beneficiary, she cannot be held to have become estopped.

*By the Court.*—Judgment affirmed.