ESTATE OF MASSOURAS: BAUTISTA, Appellant, v. SCHNEIDER, Executor, Respondent.

*March 7—April 3, 1962.*

For the appellant there was a brief by *Bernard F. Mathiowetz* and *Merle W. Hillis,* both of Milwaukee, and oral argument by *Mr. Mathiowetz.*

For the respondent there was a brief by *Affeldt & Lichtsinn,* and oral argument by *Eldred Dede,* all of Milwaukee.

HALLOWS, J.   The petitioner contends: (1) She is the sole owner of the bonds on the basis of the ownership vested in her upon their issuance by virtue of the United States treasury regulations which form a part of the contract between the United States government and the persons named as owners of the bonds; (2) the judgment of

divorce was ineffectual to deprive her of such ownership because of the treasury regulations and of the defective nature of the judgment; and (3) the imposition of a constructive trust was not warranted on the facts. The executor contends the petitioner has no claim to the bonds or the proceeds thereof because the divorce judgment effected a property settlement by which the deceased became sole owner of the bonds and such judgment is recognized by the treasury regulations and as a result, the respondent, as executor, became vested with sole ownership of the bonds of his decedent and, in the alternative, if the United States government refuses to recognize the ownership of the respondent, the facts present a proper case for the imposition of a constructive trust for the benefit of the estate.

At this late date, it is clear that United States defense bonds are contracts between the named owners therein and the government, incorporating the treasury department regulations. During his lifetime, the deceased could have cashed in these bonds without any requirement of the signature of the petitioner and, in fact, he did surrender some of the bonds for cash after the divorce. In the event of death of one co-owner of such bonds, subpart L, sec. 315.45 (c), of the treasury department's regulation No. 530, seventh edition, provides if either co-owner dies without having presented or surrendered the bond for payment or authorized reissue, the surviving co-owner will be recognized as the sole and absolute owner of the bond and payment or reissue will be only made to such survivor as though the bond were registered in his name alone. Under this regulation, the petitioner would be recognized as the legal owner of the bonds by the United States government unless this regulation is modified by sec. 315.13 [1] of the regulations and the

[1] "Sec. 315.13 *Judicial proceedings (judgment, creditors, trustees in bankruptcy, receivers of insolvents' estates, and conflicting claim-*

divorce decree and property settlement recognized. This section gives only limited recognition to a divorce decree, which might, on the facts here presented, prevent recognition of the divorce decree which did not identify the bonds.

The divorce decree is not defective as contended by the petitioner for nonconformance with sec. 247.26, Stats. A decree may by its own force vest title to property in one of the parties, but is not defective because it orders a party to convey title or adjudicates a division of property, leaving the implementation of the division to the parties. Here, the parties agreed to divide the United States defense bonds and the divorce decree determined and approved that division but did not purport to vest title to any particular bonds in either party. On the face of the decree, ownership of specific bonds could not be ascertained. But the action of the parties pursuant to the stipulation and the divorce decree in physically dividing and giving exclusive possession of particular bonds to each other determined as between themselves the ownership of the respective bonds. Only so far as the United States government was concerned were

---

*ants*). A claim against an owner or co-owner of a savings bond and conflicting claims as to ownership of or interest in such bond as between co-owners or the registered owner and a designated beneficiary, will be recognized when established by valid judicial proceedings and payment or reissue will be made, upon presentation and surrender of the bond, except as follows:

"(a) No such proceedings will be recognized if they would give effect to an attempted voluntary transfer *inter vivos* of the bond or would defeat or impair the rights of survivorship conferred by the regulations in this part upon a surviving owner or beneficiary. . . .

"A divorce decree ratifying or confirming a property agreement between husband and wife or otherwise settling their respective interests in savings bonds, will be recognized and will not be regarded as a proceeding giving effect to an attempted voluntary transfer for the purpose of this section."

further steps necessary to effect the legal title of the owner, on death, and the right of survivorship.

The petitioner, during the decedent-husband's life after the divorce, had not the slightest claim to the bonds. She recognized they belonged exclusively to the deceased by the physical division of them pursuant to the property stipulation and divorce decree. The petitioner does not rest her claim on any equities or intent of the deceased to make a gift. Her claim rests solely on the happenstance her name was not removed from the bonds and they were not cashed during the decedent's life. In now claiming beneficial ownership because of bare legal title by virtue of the treasury regulations, she repudiates the contract she made with her deceased husband. She has not only had her half of the cake and has eaten it but wants what is left of her former husband's half. Equity principles should foreclose her from her right to use the treasury regulations as a means to accomplish such purposes. On similar facts, other authorities have held the beneficial ownership of such bonds to be in the estate. *Estate of De Nat* (1958), 14 Misc. (2d) 739, 179 N. Y. Supp. (2d) 522; *Tharp v. Besozzi* (1957), 128 Ind. App. 73, 144 N. E. (2d) 430.

The petitioner relies on *Hott v. Warner* (1954), 268 Wis. 264, 67 N. W. (2d) 370, and *Wolf v. Jebe* (1943), 242 Wis. 650, 9 N. W. (2d) 124. The facts in these cases are superficially similar, but the cases are not controlling. In the *Hott Case,* the former wife was adjudged the owner of United States savings bonds upon the death of the husband, but there was no adjudication of the ownership of the bonds between the parties, as the bonds were not made a part of the property settlement or subject to the divorce decree. The parties had the same relationship to the bonds

after the divorce as they did before it. The *Wolf Case* involved a death benefit payable from the teachers' retirement fund. Likewise, the stipulation and divorce decree did not cover or effect the wife's expectancy as a designated beneficiary of that fund and the husband did nothing to change the relationship.

It has been suggested that perhaps the deceased intended the petitioner to have the bonds since he did nothing to change their legal form. We cannot infer such an intention without supporting evidence, which is lacking. The only evidence is he cashed some of the bonds during his lifetime and the divorce decree was kept with the remaining bonds.

We see no difficulty in imposing a constructive trust on United States savings bonds or their proceeds. The equitable principles which form a basis for the imposition of such an implied trust afford no basis for exempting United States savings bonds; nor do we find anything in the federal regulations relating to such bonds or in the state law which would operate to confer any such immunity. Sec. 237.11, Stats.,[2] has no application. These bonds were in the form of joint ownership, not registered in the name of one owner payable on death to another person. But even if this section were applicable, we do not find it was the intention of the legislature to prevent the court from imposing a constructive trust in the proper case. The same result was reached under a similar statute in *Katz v. Driscoll* (1948), 86 Cal. App. (2d) 313, 194 Pac. (2d) 822.

[2] "237.11 DECEDENT DEVOLUTION OF UNITED STATES OBLIGATIONS IN BENEFICIARY FORM. Where any resident of this state shall die possessed of any bonds or certificates of indebtedness of the United States of America which are registered in his name, payable on death to another, the unqualified ownership thereof and of the proceeds which may be derived therefrom shall, on the death of the original owner, belong to such named alternate payee, any law of this state to the contrary notwithstanding."

Treasury department regulations regarding registration of savings bonds in restricting their transferability and payability have not, by their terms or in necessary effect, granted the bonds or their proceeds immunity from the implied-trust doctrine, nor should such regulations be so interpreted. The regulations do not extend to the use of the proceeds of the bonds but stop with payment. The regulations are to protect the federal government from attack in the performance of the contract as made in the bond and to avoid implicating the government in disputes concerning ownership thereof. In regulating the legal title of the bonds for such purpose, the regulations should not abrogate other rights of the parties or other rules of law not necessary to achieve that purpose. See *Moore v. Brodrick* (D. C. Kan. 1954), 123 Fed. Supp. 108, affirmed (10th Cir. 1955), 226 Fed. (2d) 105, and *United States v. Ridley* (D. C. Ga. 1954), 127 Fed. Supp. 3. Where a delinquent taxpayer used United States savings bonds to conceal his income, the federal government sought and had enforced a federal tax lien against the bonds.

Agreements between co-owners as to disposition of the proceeds when received by a survivor have been enforced without violating the federal treasury regulations. 91 C. J. S., United States, p. 327, sec. 126. The imposition of a constructive trust or resulting trust on United States defense bonds or the proceeds thereof does not nullify or violate the treasury department regulations because the imposition of such a trust recognizes the legal ownership of the bonds as determined by the regulations, thus fulfilling the purpose of protecting the United States government. *Katz v. Driscoll, supra; Henderson's Adm'r. v. Bewley* (Ky. 1953), 264 S. W. (2d) 680, 51 A. L. R. (2d) 159; *Union Nat. Bank v. Jessell* (1948), 358 Mo. 467, 215 S. W. (2d) 474; *Anderson v. Benson* (D. C. Neb. 1953), 117

Fed. Supp. 765; *Ibey v. Ibey* (1945), 93 N. H. 434, 43 Atl. (2d) 157; *Morris v. Morris* (1953), 195 Tenn. 133, 258 S. W. (2d) 732. The same view has been expressed by other courts without so holding. See exhaustive annotation, Savings Bonds—Constructive Trust, 51 A. L. R. (2d) 163. Annos. Judicial Decisions Involving United States War Savings Bonds, 168 A. L. R. 245, and 173 A. L. R. 550.

The facts in this case call for the imposition of a constructive trust. Such a trust is implied by operation of law as a remedial device for the protection of a beneficial interest against one who either by actual or constructive fraud, duress, abuse of confidence, mistake, commission of a wrong, or by any form of unconscionable conduct, has either obtained or holds the legal title to property which he ought not in equity and in good conscience beneficially enjoy. *Joerres v. Koscielniak* (1961), 13 Wis. (2d) 242, 108 N. W. (2d) 569; *Zartner v. Holzhauer* (1931), 204 Wis. 18, 234 N. W. 508; *Warsco v. Oshkosh S. & T. Co.* (1926), 190 Wis. 87, 208 N. W. 886; Bogert, Trusts and Trustees (2d ed.), pp. 3–10, sec. 471; Davitt, Elements of Law, ch. 18, Equity, p. 305; 54 Am. Jur., Trusts, p. 167, sec. 218; 89 C. J. S., Constructive Trusts, p. 1015, sec. 139.

It was pointed out in *Masino v. Sechrest* (1954), 268 Wis. 101, 66 N. W. (2d) 740, and in *Nehls v. Meyer* (1959), 7 Wis. (2d) 37, 95 N. W. (2d) 780, that a constructive trust is a device in a court of equity to prevent unjust enrichment which arises from fraud or abuse of confidential relationship and is implied to accomplish justice. In those cases, the grantee of property would have been unjustly enriched by a repudiation of an agreement. Similarly, here, the petitioner would be unjustly enriched by repudiation of the property settlement. Dean Pound observed, "Thus constructive trust could be used in a variety of situations, . . . and sometimes to develop a new field

of equitable interposition, as in what we have come to think the typical case of constructive trust, namely, specific restitution of a received benefit in order to prevent unjust enrichment." The Progress of Law, Equity, 33 Harvard Law Review (1920), 420, 421. Restatement, Restitution, Constructive Trust, p. 640, sec. 160, states the rule as follows:

"Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises."

We consider the language in *Will of Jaeger* (1935), 218 Wis. 1, at page 13, 259 N. W. 842, that a constructive trust does not arise in the absence of fraud, positive or constructive, to be a too-limited statement of the basis for the imposition of a constructive trust as a "formula through which the conscience of equity finds expression." See *Beatty v. Guggenheim Exploration Co.* (1919), 225 N. Y. 380, 386, 122 N. E. 378 (CARDOZO).

If the legal rights of the petitioner as surviving co-owner under the treasury regulations are, in fact, defeated by a constructive trust, it is because the petitioner agreed to such defeat in the property stipulation and in its execution. It would be inequitable now to allow the petitioner to reacquire beneficial ownership solely on the basis of the treasury regulations.

The trial court was correct in impressing a constructive trust upon the bonds and proceeds and requiring the petitioner to deal with them as a trustee. The judgment appealed from should be modified by the county court to additionally order the petitioner Betty Ann Bautista: (1) To comply with all the federal statutes and United States treasury department regulations applicable to these United States savings bonds, Series E; (2) to execute promptly all documents necessary and to perform all acts necessary or

requested by the executor to enable these bonds to be paid by the United States government; and (3) to turn over all proceeds of the bonds received to the said executor, John F. Schneider.

*By the Court.*—Judgment affirmed, and the case remanded with directions to modify the judgment consistent with this opinion.