Estate of Dorothy E. Paulman Executor:
Carole D. Paulman, Plaintiff-Appellant,

v.

Jeannine Pemberton, Defendant,

Charles R. Paulman, Defendant-Respondent.

Court of Appeals

*No. 98–3021. Submitted on briefs January 5, 2001.—Decided
June 28, 2001.*

2001 WI App 164

(Also reported in 633 N.W.2d 715.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thomas Van Beckum* of *Thomas Van Beckum Law Office, S.C.*, Kenosha.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Charles R. Paulman*, pro se.

Before Dykman, P.J., Roggensack and Lundsten, JJ.

¶ 1. DYKMAN, P.J. Carole D. Paulman, in her capacity as executor of her mother's estate, appeals from an order denying her motion asking the trial court to force the sale of a home owned by Charles Paulman. Contrary to what the trial court determined, Carole argues that Charles' residence is not protected from a

forced sale under WIS. STAT. § 815.20 (1995–96),[1] the statute exempting homesteads from execution. We conclude that § 815.20 does not apply to Charles in regard to Carole's claim because he purchased his home with converted funds in which Carole had an interest. We therefore reverse.

## I. Background

¶ 2. Carole, Jeannine Pemberton, and Charles are the surviving children of Dorothy Paulman. In November 1991, Dorothy executed a will leaving her property to the three of them in approximately equal shares. Sometime after that, Dorothy executed a "Declaration of Trust" and "Paulman Family Trust," which transferred all her assets to the trust. The trust named Jeannine and Charles as primary beneficiaries, with only minor provisions for Carole.

¶ 3. Dorothy also executed one or more durable powers of attorney, giving Jeannine and Charles control over her affairs and assets. Subsequently, Dorothy's house was sold for $186,000, and Jeannine and Charles placed her in a group home. After the sale

---

[1] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted. WISCONSIN STAT. § 815.20 states in part:

> (1) An exempt homestead as defined in s. 990.01 (14) selected by a resident owner and occupied by him or her shall be exempt from execution, from the lien of every judgment and from liability for the debts of the owner to the amount of $40,000, except mortgages, laborers', mechanics' and purchase money liens and taxes and except as otherwise provided. The exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead nor by the sale of the homestead, but shall extend to the proceeds derived from the sale to an amount not exceeding $40,000, while held, with the intention to procure another homestead with the proceeds, for 2 years.

of the house, Jeannine wrote a check to herself for $88,000, apparently drawing on a joint account containing the proceeds from the sale.[2] Jeannine also wrote a check to Charles for $78,237, drawing on the same account. Jeannine and Charles used these funds to purchase homes.

¶ 4. On February 24, 1995, Dorothy revoked the family trust and executed new powers of attorney. She died on May 2, 1995, and her will was admitted to probate in Illinois with Carole as executor of the estate. Carole filed a complaint against Jeannine and Charles, alleging conversion and breach of fiduciary duty. She amended the complaint to include a request that the trial court impose a constructive trust on any property Jeannine or Charles purchased using funds obtained from their mother. The trial court did so.

¶ 5. In an October 1996 stipulation and order, Jeannine and Charles agreed to pay $3,000 to Dorothy's estate within seven days, an additional $20,000 within sixty days, and one more sum of $12,000 by June 1, 1997. The stipulation also stated that if Jeannine and Charles did not make the payments, the court would enter a judgment on the merits in favor of Dorothy's estate.

¶ 6. Jeannine and Charles failed to follow the stipulation, and the trial court entered judgment accordingly. The judgment stated that "[t]he material allegations of plaintiff's Complaint as amended are proven to be true and correct." Jeannine and Charles moved to vacate the judgment, arguing that Carole had

---

[2] Copies of the check in the record indicate a joint checking account in Dorothy's and Jeannine's names.

failed to comply with one of the Wisconsin probate statutes. The trial court denied the motion.[3]

¶ 7. Carole moved the trial court to order Jeannine and Charles to deliver title and possession of their homes to Dorothy's estate, in satisfaction of the judgment. In the alternative, Carole requested in her motion that the court force the sale of the homes. Jeannine and Charles asserted that under WIS. STAT. § 815.20, their homes were exempt from execution and could not be used to satisfy the judgment. The trial court agreed with Jeannine and Charles, determining that their homes were protected by the homestead exemption. Carole appeals.

## II. Analysis

█

¶ 8. As an initial matter, we note that after Carole filed her appellate brief, we issued an order dismissing Jeannine from this appeal because she had received a discharge of her debts under Chapter 7 of the bankruptcy code. Carole moved that we reinstate the appeal against Jeannine because Carole had subsequently filed a petition to reopen Jeannine's bankruptcy case. We issued another order, explaining that we would hold Carole's motion to reinstate the appeal against Jeannine in abeyance pending the bankruptcy court's decision. We also ordered that the appeal against Charles would proceed and that Carole should advise this court of the outcome of Jeannine's bankruptcy proceedings. Carole has since informed us that the bankruptcy court denied her petition and that

---

[3] Charles has not argued on appeal that Carole failed to comply with the probate statutes, and we therefore consider that issue abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

Jeannine's debts remain discharged. We therefore deny Carole's motion to reinstate Jeannine as a party to this appeal.

¶ 9. Carole makes a number of arguments in support of her assertion that Charles is not entitled to the homestead exemption set forth in WIS. STAT. § 815.20. She argues that (1) the trial court had the authority under its general equitable powers to transfer Charles' home to Dorothy's estate; (2) Charles does not have an actual ownership interest in his home because he did not purchase the home with his own funds; (3) Charles waived any exemption rights by stipulating to an entry of judgment and by failing to timely assert the exemption rights; (4) Charles gave Carole a "consensual lien" over his home pursuant to WIS. STAT. § 815.18(12)[4] when he stipulated to a judgment; (5) the homestead exemption does not apply to Charles by operation of § 815.18(10);[5] and (6) equity and public policy require that Charles be denied the protection of the homestead exemption.

¶ 10. Charles responds pro se to most of Carole's arguments, asserting that because he owns less than $40,000 of equity in his home, the home is fully exempt,

---

[4] WISCONSIN STAT. § 815.18(12) reads:

LIMITATIONS ON EXEMPTIONS. No property otherwise exempt may be claimed as exempt in any proceeding brought by any person to recover the whole or part of the purchase price of the property or against the claim or interest of a holder of a security interest, land contract, condominium or homeowners association assessment or maintenance lien or both, mortgage or any consensual or statutory lien.

[5] WISCONSIN STAT. § 815.18(10) reads, in part:

Any or all of the exemptions granted by this section may be denied if, in the discretion of the court having jurisdiction, the debtor procured, concealed or transferred assets with the intention of defrauding creditors.

assuming WIS. STAT. § 815.20 applies. We need not determine whether Charles' home would be fully or partially exempt under § 815.20 because we conclude that the homestead exemption does not apply to him.

¶ 11. This case requires us to interpret and apply the homestead exemption statute, a question of law that we review de novo. *See Rumage v. Gullberg*, 2000 WI 53, ¶ 16, 235 Wis. 2d 279, 611 N.W.2d 458. The homestead exemption is to be liberally construed. *See id.* at ¶ 17. However, as we discuss below, there are select instances in which the homestead exemption is not available to a party who seeks its protection.

¶ 12. In *Warsco v. Oshkosh Sav. & Trust Co.*, 190 Wis. 87, 88–89, 96, 208 N.W. 886 (1926), the supreme court upheld the trial court's imposition of a lien on homestead property in which converted trust funds were invested. The court interpreted and applied WIS. STAT. § 272.20 (1925), the predecessor statute to WIS. STAT. § 815.20.[6] *See Warsco*, 190 Wis. at 89; *cf.* WIS. STAT. § 815.20. The court recognized that "[t]he language of sec. 272.20 of the Statutes must be conceded as broad and inclusive," and that the exemption may

---

[6] WISCONSIN STAT. § 272.20 (1925) reads in part:

A homestead to be selected by the owner thereof . . . and the dwelling house thereon . . . shall be exempt from seizure or sale on execution, from the lien of every judgment and from liability in any form for the debts of such owner to the amount in value of five thousand dollars, except laborers,' mechanics' and purchase money liens and mortgages lawfully executed, and taxes lawfully assessed and except as otherwise provided in these statutes, and such exemption shall not be impaired by temporary removal with the intention to reoccupy the same as a homestead nor by the sale thereof, but shall extend to the proceeds derived from such sale to an amount not exceeding five thousand dollars, while held, with the intention to procure another homestead therewith, for a period not exceeding two years.

apply not only to contract debts, but also to judgments in tort. *Warsco*, 190 Wis. at 91–92. However, the court concluded that the exemption did not apply where the judgment was based on the conversion of funds directly traceable to the homestead. *See id.* at 92. The court reasoned as follows:

> [I]t was never contemplated nor intended that a homestead shall be created and maintained with stolen or embezzled property, or by the wrongful appropriation of property rightly belonging to others. If this were so, the statute exempting a homestead, instead of promoting the public welfare, would operate as an immoral and baneful influence, undermining and destroying the fundamental principles of government.

*Id.* at 93–94.

¶ 13. Charles cites to *Smith v. Omans*, 17 Wis. 406 (1863), for the proposition that "[t]he homestead of a judgment debtor is not liable to forced sale on execution, although the judgment was rendered in an action of tort." However, the *Smith* case involved an assault and battery, *id.* at 407, and the court in *Warsco* specifically recognized that it was retreating from its position in *Smith* in cases where the homestead was purchased or maintained with converted funds, *Warsco*, 190 Wis. at 92.

¶ 14. *Warsco* is an old case, but it remains good law. Moreover, it is not the only instance where an appellate court has limited the application of the homestead exemption. In *Master Lock Credit Union v. Rayford*, 119 Wis. 2d 301, 302, 349 N.W.2d 737 (Ct. App. 1984), a husband and wife owned a home in joint tenancy. Master Lock obtained a judgment for approximately $3,100 against the wife in June 1980. *Id.* The

couple divorced in June 1982 and stipulated that the husband would receive their home, whereas the wife would be awarded a lien of $7,500 on the property. *Id.* After the divorce, the trial court allowed Master Lock to purchase the wife's lien interest at a sheriff's sale. *Id.* The husband appealed, arguing that under the homestead exemption, both the home and his wife's lien interest in it were exempt from execution and that Master Lock could not hold a judgment lien against the property. *Id.* at 302–03. We rejected his arguments, concluding that "homestead rights can rise no higher than ownership rights" and that his ownership rights were subject to the lien created by the divorce stipulation. *Id.* at 304.

¶ 15. Thus, under *Warsco* and *Master Lock*, we know that there are instances where the homestead exemption does not apply, thus permitting a judgment lien against a person's home. We see no reason to treat judgment liens differently from execution sales under WIS. STAT. § 815.20.[7] The plain language of § 815.20 does not differentiate between the two, and neither did the supreme court in *State v. Dziuba*, 148 Wis. 2d 108, 435 N.W.2d 258 (1989). In *Dziuba*, the court concluded that the State could force the sale of a criminal defendant's home and apply the proceeds toward restitution. *Id.* at 109, 119. The defendant attempted to invoke § 815.20, but the court relied on *Warsco* when it explained that "where a person benefits from a wrongful act, the homestead exemption statute may have to

---

[7] In *Master Lock Credit Union v. Rayford*, 119 Wis. 2d 301, 304, 349 N.W.2d 737 (Ct. App. 1984), we did not decide the question of whether Master Lock could force a sale of the husband's home because Master Lock conceded that it took the wife's lien rights subject to the terms of the divorce decree, which apparently prohibited partition.

surrender to other stated public policy." *Dziuba*, 148 Wis. 2d at 112, 115.

¶ 16. Charles is not facing a criminal restitution order, but that is not a requirement under *Warsco*. *Warsco* requires only conversion, theft, or other wrongful appropriation. Charles asserts that he did not convert Dorothy's property and that this court cannot rest any decision on such an "assumption." However, Charles' conversion of his mother's property is not merely an assumption; it is a fact he and Jeannine conceded in the trial court. As part of the settlement stipulation, they agreed that if they failed to meet the stipulation's terms, the trial court would enter judgment on the merits in favor of Dorothy's estate. When Jeannine and Charles violated the agreement, that is just what the trial court did, incorporating as fact Carole's allegations in her amended complaint. That complaint includes this allegation: "Defendants misrepresented and misused their apparent fiduciary authority to convert and distribute Dorothy E. Paulman's assets and monies to their own benefit." Thus, Charles has conceded that he engaged in misrepresentation and conversion, and he cannot now argue otherwise.

■

¶ 17. In sum, we conclude that WIS. STAT. § 815.20 does not bar Carole's request for an execution sale of Charles' home because he purchased it with converted funds in which Carole had an interest. We therefore reverse the trial court order determining that Charles' home was protected by § 815.20, and we remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.