McGowan vs. Supreme Court of Independent Order of Foresters.

McGowan, Respondent, vs. The Supreme Court of the Independent Order of Foresters, Appellant.

*September 9 — October 20, 1899.*

*Benefit societies: Change of beneficiary: Statements in application: Materiality: Fraud: Court and jury: Evidence: Prior declarations of insured: Agency: Admissions: Report of examining physician: Physicians and surgeons: Privileged communications: Hearsay.*

1. One who is insured in a mutual benefit association and who wishes to change the beneficiary must make the change in the manner required by his policy and the rules of the association, and any material deviation from that course will render the attempted change ineffective; but where the insured, having done every substantial act required of him, dies before the new certificate is actually issued, and only formal acts on the part of the association remain to be performed, the change will be considered to have been made, even in an action at law.

2. Answers of the insured, in his application for insurance, to questions concerning the health, death, or age at death of his ancestors and brothers and sisters, are material as a matter of law, and it is error to submit the question of their materiality to the jury, even though by the policy such answers are made the basis of the contract and declared to be warranties only so far as they are material.

3. In such a case, the insured in answer to the question for what disease he had been attended by a physician during the last five years, replied that he did not need any. He also declared at the close of his application that his answers were "true and correct," and that

McGowan vs. Supreme Court of Independent Order of Foresters.

he had made no "intentional omission, concealment, or mental reservation of any material fact or circumstance relating to his past or present health, habits, or condition, or family history." There was evidence that he had a chronic cough and weakness of the lungs for two or three years before the application. *Held*, that the questions whether the insured had had a disease for which he needed the services of a physician during the time mentioned, and whether his answer that he had not needed any physician was not an intentional omission or concealment of a material fact as to his health, should have been submitted to the jury.

4. Declarations and admissions of the insured, made prior to the application, and so remote as to be disconnected with any act or fact showing his then condition of health, are incompetent as substantive proof to contradict the statements made in the application, as against a third party who is the beneficiary; but where there is independent evidence of the falsity of those statements, evidence of the prior declarations is admissible to show that the assured knew that the statements were false.

5. Where the examining physician of a fraternal insurance company is an officer of the local lodge, his report as to the physical condition of an applicant for insurance, made after a personal examination, is a statement of an officer of the insurer, made as a part and within the scope of his official duties, and as such is admissible in evidence as an admission of the insurer, under the same conditions as admissions of agents generally. *Hiles v. Hanover F. Ins. Co.* 65 Wis. 585, distinguished.

6. *It would seem* that the testimony of a physician that during the year preceding the issuance of a policy of insurance he was consulted by the insured as a physician and treated him for a disease, is inadmissible, since it must have been based either upon a privileged communication or upon hearsay.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Reversed.*

This is an action upon a benefit certificate issued by the defendant to one Edward C. Pion, on the 3d day of June, 1896; the said Pion being then a charter member of Court Desota, located at Galena, Illinois, and the defendant being a fraternal association issuing life insurance certificates to its members upon the assessment plan. The certificate, when issued, was made payable to one Frances Heid, the affianced

wife of said Pion. The complaint alleges that on January 31, 1898, Pion duly changed the beneficiary, in accordance with the rules and regulations of the order, and thereby made his insurance payable to the plaintiff, his sister, and that Pion died February 9, 1898. The amended answer admits the issuance of the certificate of insurance, and death of the insured, and the furnishing of sufficient proofs of death, but denies that the beneficiary was ever changed, and further sets up the defense of false statements made by the insured in his application for insurance, by which the policy was avoided.

The rules of the order prescribing the manner in which the insured may make a change of beneficiary were put in evidence, and they provide, in substance, that such change may be made in the following manner: (1) By filing a written application with the local court for such change; (2) paying a fee of fifty cents; (3) surrendering the old certificate; (4) furnishing satisfactory evidence that he, and not the beneficiary, has paid the assessments; (5) whereupon the local court shall cause the application, duly certified by the court officers and sealed, to be transmitted, with the certificate, to the head office; (6) on the receipt of which, if approved by the supreme chief ranger, the supreme secretary shall incorporate in the certificate the desired change. The rules further provide that upon the issuance of the second certificate the first should thereby become null and void, and that no certificate should be assigned, nor the beneficiary changed, except in the manner so provided. The rules further provide that, upon proof of death and allowance of the claim, the remittance should be sent from the head office to the court officer, to be delivered to the beneficiary on the surrender of the certificate; and provide that, if satisfactory proof of its loss or destruction or other satisfactory cause for its nonsurrender should be furnished, the remittance might be delivered, upon execution of a proper release of all claims.

McGowan vs. Supreme Court of Independent Order of Foresters.

It appeared by the evidence that the insured removed from Galena, Illinois, to La Crosse, Wisconsin, some time after the issuance of the original certificate, and lived with the plaintiff, his sister; that on the 23d of December, 1896, and prior to such removal; he made a written application to the local court for a payment to him of $1,000, on the ground that he was totally and·permanently disabled from following any business, and stated that such permanent disability resulted from tubercular disease of the lungs. This application was accompanied by a certificate of the officers of the local court stating their belief that the statements of the insured were correct, and also by a statement of the court physician stating that he had examined the insured, and· found that he was permanently disabled, as the result of bronchial and pulmonary irritation and the common symptoms of incipient pulmonary tuberculosis. This application was made under a clause of the certificate which provided for the payment of $1,000 to the insured in case of total and permanent disability. The certificate further provided for the payment of $2,000 to the beneficiary upon the death of the insured, less any sums which had been previously paid on account of permanent disability. This claim was not allowed. The insured was a railroad brakeman running on the Chicago, Burlington & Northern Railroad. He entered the road's service in September, 1894, as a brakeman on the main line, with headquarters at La Crosse, and was transferred to the Galena branch, with headquarters at Galena, in December, 1894, where he remained until July 1, 1895, when he returned to the main line, and so remained until January, 1896, when he went back again to the Galena branch, where he remained until December, 1896, at the time of making his application for benefits on the ground of permanent disability. He then ceased work on account of sickness, and went to Colorado, from whence he returned in April, 1897, and went to work again for the railroad com-

pany as flagman, until October, 1897, when he ceased to work on account of sickness. From October, 1897, until his death, February 9, 1898, he seems to have lived at La Crosse with the plaintiff, his sister.

The head of the defendant order is called the supreme chief ranger, and he has his office at Toronto, Canada. In January, 1898, one Robert Kidney, a deputy of the supreme chief ranger, whose business, under the rules of the order, is to incorporate subordinate courts, look after those already in existence, and generally to represent the supreme chief ranger in that respect, came to La Crosse and saw the insured, on the 31st of January, at the home of his sister. The insured on that day told him that he wished to change the beneficiary in his certificate, and make the policy over to his sister, the plaintiff. Mr. Kidney produced the proper blank, and it was filled out, the fifty-cent fee was paid, and the application was at once transmitted to the local court at Galena for the signature of the court officers and the seal. The certificate was not surrendered, because it was then in the possession of Frances Heid, at Galena. The application reached Galena, and the proper certificate was placed thereon by the officers of that court, and the same was transmitted to the supreme chief ranger, and reached him February 7, 1898. The original certificate reached Mr. Pion on the 7th or 8th of February, but in what manner it was obtained from Miss Heid does not appear. He immediately delivered it to Kidney, who, on the morning of the 9th of February, being the day of Pion's death, mailed it to the proper officers at Toronto, where it was received February 11th; Pion having died, as before stated, February 9th. No new certificate was ever issued, nor does it appear that the original certificate was ever returned.

Prior to the issuance of the original certificate, and on the 4th day of May, 1896, the insured underwent a medical examination at the hands of the court physician at Galena,

Illinois, who, after such examination, made favorable answers to thirty questions regarding the physical condition of Pion, and recommended him as a first-class risk. The insured also made answers to 157 questions with regard to his physical condition and his family history, and it is charged that the answers to a number of these questions were false, and that the insurance is invalid thereby. These questions and the answers will be more fully discussed in the opinion, and therefore it is unnecessary to set them forth at length here. The concluding paragraph of said statement contained the following affirmation: "I hereby affirm and declare that the answers to each and all of the above questions, also those made to the medical examiner, are true and correct, and that no intentional omission, concealment, or mental reservation has been made of any material fact or circumstance relating to my past or present health, habits, or condition, or to my family history, and I agree that the questions and answers herein contained shall form a part of my contract." The certificate contains the following provision: "In consideration of the application for membership, and of the agreements and statements therein contained, and of the statements, representations, and declarations contained in the medical examination paper (in so far as the said agreements, statements, representations, and declarations are material to the contract), and in consideration, also, of the warranty of the applicant that the same, being material to the risk, are true and correct, . . . and upon the faith and credit of all and each of which agreements, statements, promises, representations, provisions, and declarations, and in consideration of the payment of all assessments, dues, fees, capitation tax, and fines, this benefit certificate is issued," etc.

A special verdict was submitted to the jury, which, with its answers, is as follows: "(1) Was the statement in Exhibit No. 6, as to the cause of the death of the mother of

insured, material to the contract? *A*. No. (2) Was the statement in Exhibit 6, as to the cause of the death of the mother of the insured, substantially true. *A*. Yes. (3) Was the statement in Exhibit No. 6, as to number of sisters of insured dead, material to the contract? *A*. No. (4) Was the statement in Exhibit No. 6, as to what diseases insured had been attended for by a physician during the previous five years, material to the contract? *A*. (By the court.) Yes. (5) Was the answer of the deceased to question 66 in Exhibit 6, 'What diseases have you been attended by a physician for during the last five years?' imperfect? *A*. Yes. (6) Was the statement in Exhibit No. 6, as to whether insured was in good health at that time, material to the contract? *A*. (By the court.) Yes. (7) Was the statement in Exhibit No. 6, as to the previous health of the father of insured, material to the contract? *A*. (By the court.) Yes. (8) Stricken out. (9) Was deceased in good health at the time he signed Exhibit No. 6? *A*. Yes. (10) If you answer the preceding question in the negative, then, when insured signed Exhibit No. 6, did he know that fact? *A*. ——. (11) Was the health of father of deceased good prior to his death? *A*. Yes. (12) If you answer the preceding question in the negative, then, when insured signed Exhibit No. 6, did he know that fact? *A*. ——. (13) Had his father, prior to his death, been afflicted with inflammatory rheumatism? *A*. No. (14) If you answer the preceding question in the affirmative, then, when insured signed Exhibit No. 6, did he know that fact? *A*. ——. (15) At the time insured signed Exhibit No. 6, was there anything, to his knowledge or belief, in his physical condition, family history, or personal history or habits, tending to shorten his life, not distinctly set forth therein? *A*. No. (16) In case the plaintiff is entitled to recover under the law, at what sum do you assess his damages? *Answered by the court:* $2,099."

Upon this verdict, judgment for the plaintiff for $2,099

damages and costs was rendered, from which judgment the defendant appeals.

For the appellant there was a brief by *Mylrea & Bird*, and oral argument by *W. H. Mylrea* and *C. B. Bird*. To the point that the privilege of a physician applies to the disclosure of personal facts in regard to the individual himself, and not to the simple fact as to whether or not a physician had been consulted, they cited *Breisenmeister v. Supreme Lodge*, 81 Mich. 525; *Dittrich v. Detroit*, 98 Mich. 245; *Brown v. Metropolitan L. Ins. Co.* 65 Mich. 306; *Patten v. United L. & A. Ins. Asso.* 133 N. Y. 450; 3 Jones, Ev. 778; 2 Bacon, Ben. Soc. § 461.

For the respondent there was a brief by *Fruit & Gordon*, and oral argument by *J. J. Fruit*.

WINSLOW, J. The appellant's general contentions are: first, that the evidence shows that the beneficiary was never changed; second, that the evidence shows fraudulent and material misstatements in the application for insurance; and, third, that there were erroneous rulings upon evidence. These contentions will be considered in the order indicated.

1. It is now well settled that one who is insured in a mutual benefit association, and who wishes to change the beneficiary, must make the change in the manner required by his policy and the rules of the association, and that any material deviation from this course will render the attempted change ineffective. It is equally well settled that there are cases where literal and exact conformity with the requirements of the policy may be excused. In the case of *Supreme Conclave v. Cappella*, 41 Fed. Rep. 1, the subject is exhaustively reviewed, and the conclusion reached that there were three exceptions to the rule of exact compliance: First, where the society has waived strict compliance by issuing a new certificate without insisting on the performance of all the intermediate steps; second, where, by loss of the first

certificate without fault, its surrender becomes impossible, a court of equity will not require an impossibility, but will treat the change as made if the insured has taken all the other necessary steps and done all in his power to make the change; third, where the insured has pursued the course required by the policy and the rules of the association, and done all in his power to make the change, but before the new certificate is actually issued he dies, a court of equity will decree that to be done which ought to be done, and will act as though a new certificate had been issued. *National Asso. v. Kirgin*, 28 Mo. App. 80; *Isgrigg v. Schooley*, 125 Ind. 94; *Grand Lodge v. Noll* (Mich.), 15 L. R. A. 350, note; *Marsh v. Supreme Council*, 149 Mass. 512; *Luhrs v. Luhrs*, 123 N. Y. 367; Bacon, Ben. Soc. (New ed.), §§ 310, 310a. The case at bar clearly comes within the last of the above classes. The insured had done every substantial act required of him by the terms of the policy and the rules of the society in order to make a complete change of beneficiaries. The last act was the surrender to the deputy chief ranger of the original certificate, at least one day before his death. He could do nothing further. On the part of the society there were simply formal acts to be performed. There was no discretion as to whether the society would allow the change. It is true the rules say that the change shall be made and a new certificate issued if the application be approved by the supreme chief ranger, but this approval plainly relates to matters of form only. It was the right of the insured to make the change before his death if he took the required steps, and if the new beneficiary was competent to be such under the rules of the order. We hold, therefore, that under the rules laid down in *Supreme Conclave v. Cappella*, *supra*, the insured in the present case had made an effective and complete change of beneficiaries.

But it is urged that the cases in which this doctrine has been applied are all cases where the money has been brought

McGowan vs. Supreme Court of Independent Order of Foresters.

into court, and the other claimant has been interpleaded, and thus the action has become an equitable one, in which equitable principles may be and are applied, while the present action is an action at law, where strictly legal principles must prevail. The objection does not seem forcible. Either there was a change of beneficiaries or there was not. There is no middle course. Nor do we see how there could well be a change in equity and no change at law, or a change which should operate as to some parties and not as to other parties to the transaction. Therefore we hold that the facts here shown prove a change of beneficiaries, even though the action be one at law.

2. In the application for insurance the insured was asked this question, "(66) For what diseases have you been attended by a physician during the last five years?" to which he replied, "Did not need any." He also answered, in response to other questions, that his father's health previous to his death was good; that none of his near relatives had been afflicted with inflammatory rheumatism; that his mother died of inflammation of the bowels; that he had no sisters dead; that both his grandfathers were killed in the army; and that he himself had never had pleurisy, inflammation of the lungs, acute bronchitis, chronic catarrh, diseases of the throat and air passages, shortness of breath, chronic cough, or consumption. These answers were all attacked as false by the defendant, and much evidence was adduced in support of such claim of falsity. It will be noticed that a part of these claims are disposed of by the verdict, and some do not seem to have been disposed of at all. Thus, it is found that the cause of the mother's death was not material, and that the statement was substantially true; that the statement of the number of sisters dead was immaterial; that the answer to question No. 66 was imperfect; that the health of the father was good prior to his death, and that he had not been afflicted with inflammatory rheumatism; and that

the deceased was in good health when he made the application; but the verdict does not state whether the statement as to the death of the grandfathers or the statement that he had no brothers dead were material to the contract. It appeared by the evidence, without contradiction, that the insured had one sister dead, whose funeral he attended a few years before his own death; that he had one brother who died in infancy; and that both his grandfathers died natural deaths. As will appear from the statement of facts, the representations and statements of the insured in his application are only made the basis of the contract and declared to be warranties *so far as material,* and hence, we suppose, resulted the submission to the jury of the various questions as to the materiality of the statements as to the deaths of brothers and sisters and the cause of the death of the mother. It would seem strange, indeed, if these were questions for a jury to pass upon. If a jury may say that the condition of health of near relatives, such as parents and brothers and sisters of the insured, is not material when inquired about as preliminary to the making of a contract of insurance, why may they not advance a step further and declare that the condition of health of the insured himself is immaterial? It is matter of common knowledge that family tendencies to disease, as developed in the immediate blood relatives, are of the utmost importance in judging of the probabilities of life. No expert knowledge is required to know that such matters are most material to be known by a proposed insurer, and are always carefully asked about, and that applicants are frequently rejected because of such family tendencies, although they may not have appeared in the insured themselves. Bacon, Ben. Soc. (New ed.), § 230. All of the questions as to the health or death, or age at death, of the ancestors or brothers and sisters of the deceased, were material to the risk as matter of law, and the court should have so declared. Whether inquiries concerning very remote

relatives should be held material as matter of law is a question not before us now for decision. It was error, therefore, to submit the question as to materiality of the questions above referred to to the jury.

But there is another question which is of greater importance. The insured was asked, by question No. 66, for what diseases he had been attended by a physician during the last five years, and he answered that he did not need any physician. This fairly means that he had had no diseases during that time for which he needed the attendance of a physician. This answer was disposed of by the finding that it was imperfect, and the argument is made that because it was an imperfect answer, and because the company accepted the application without requiring it to be made more certain and responsive to the question, all objections are now waived. It needs no finding of the jury to show that it is an imperfect answer to the question, but, imperfect as it is, it states a material fact, and that is that the insured had not needed a physician for disease during the last five years. It states this fact plainly and unmistakably, and the insured affirmed and declared, at the close of his application, that this answer was "true and correct," and that he had made no "intentional omission, concealment, or mental reservation of any material fact or circumstance relating to my past or present health, habits, or condition, or family history." Now, as has been before said, there was much testimony in this case, aside from the physicians' testimony, to the effect that the insured had a chronic cough and weakness of the lungs for two or three years before the application, and both the question whether he had a disease for which he needed the services of a physician, as well as the question whether the answer to the sixty-sixth question was not an intentional omission or concealment of a material fact as to his health, should clearly have been submitted to the jury.

3. The evidence of certain fellow-workmen as to state-

ments made by Pion concerning his health, in the summer of 1895, was offered by the defendant and ruled out, and this ruling is alleged as error. The rule is that declarations and admissions of the assured, made prior to the application, and so remote as to be disconnected with any act or fact showing his then condition of health, are incompetent as substantive proof to contradict the statements made in the application, as against a third party who is the beneficiary; but where, as here, there is independent proof tending to show falsity of the statements in the application, the evidence of the prior declarations of the assured is admissible to show his knowledge of the falsity of his answers. Bacon, Ben. Soc. (New ed.), § 460. The questions should have been allowed.

The examining physician, who was an officer of the local court of Galena, made a personal examination of Pion at the time of his application, and made a long written report, in answer to questions, as to Pion's physical condition, in which he gave a very favorable account of his health. This report was offered in evidence by the defendant on the trial, in connection with, and as part of, the application. Thereafter the plaintiff asked one of the medical experts a hypothetical question based on the facts stated in the physician's report, and the defendant objected, on the ground that the paper was not evidence of the facts stated in it, but only of the fact that such a report was made. The court overruled the objection, and held that the statements in the report were in the nature of admissions by the company of the facts therein stated, not conclusive, but competent to go to the jury on the subject. We think the ruling was correct. The statements were made by one of the defendant's officers, as a part of his official duties, and within the scope of such duties. Such statements are plainly statements of the company itself, and must be regarded as upon the same plane as the admissions of agents generally, made during the transaction

of the agency business, and within its scope, which are deemed parts of the *res gestæ*. 1 Jones, Ev. § 256. The case bears no analogy to that of *Hiles v. Hanover F. Ins. Co.* 65 Wis. 585, where the statement of the insured in his proof of loss was sought to be used as evidence in his own favor.

Two physicians were allowed to testify that during the year 1895 they were consulted as physicians by the insured, and that they attended him for a disease. These questions were objected to, on the ground that they called for privileged communications, but the objections were overruled. While these rulings were favorable to the appellant, and therefore are not here for review, it is not improper to call attention to the fact that a physician who answers that he treated a man for a disease must obtain his knowledge either from information received from the patient or by observation of his symptoms, all of which are privileged (*Boyle v. N. W. Mut. R. Asso.* 95 Wis. 314), or from statements made by others, which are hearsay (*Edington v. Mut. L. Ins. Co.* 67 N. Y. 185).

We do not deem it necessary to consider any other points made. Enough has been already said to indicate the proper course to be pursued upon a new trial.

*By the Court.*— Judgment reversed, and action remanded for a new trial.