**COHN et al. v. COHN et al.**

**No. 9671.**

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 19, 1948.

Decided Dec. 20, 1948.

Mr. Arthur L. Willcher, of Washington, D. C., for appellants.

Mr. Warren E. Miller, of Washington, D. C., with whom Mr. David S. Allshouse, of Washington, D. C., was on the brief, for appellee Cohn.

Mr. George Morris Fay, United States Atty., Mr. John D. Lane, Assistant United States Atty., and Messrs. D. Vance Swann and Thomas E. Walsh, Attys., Department of Justice, all of Washington, D. C., entered appearances for appellee United States of America.

Before STEPHENS, Chief Judge, and PRETTYMAN and PROCTOR, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a civil action brought by the wife of a deceased naval officer against his parents and the United States to recover the proceeds of a National Service Life Insurance policy. The parents of the insured were the named beneficiaries on the policy. The wife claimed that by a change she had been named in their stead.

No writing, formal or informal, explicit or merely suggestive, nor any purported copy of such a writing, evidencing a change in beneficiary, was produced upon the trial. The Navy Department had no such document, and neither had the Veterans Administration. No witness was produced who ever saw one.

The evidence presented by the plaintiff wife consisted principally of the testimony of two friends and fellow officers of the deceased officer. One said that on a certain day, preliminary to a plane flight, he had secured from the disbursing officer of the outfit "beneficiary blanks" and that he gave one to Cohn. He testified that he saw Cohn making motions as though writing on the form.[1] The other officer said that in a conversation about insurance Cohn had "told me he had made it out to his wife". The whole of this testimony does not remotely approach the evidence necessary to establish by parol the contents of a lost or missing document.[2]

The regulations of the Veterans Administration require that a change in the named beneficiary of a National Service Life Insurance policy be evidenced in writing.[3] While the courts have often held that no particular form is necessary for that writing,[4] the requirement that there be a writing is the minimum necessary to protect the public, the families and loved ones of servicemen and the interests of the deceased insured veterans themselves against unmitigated fraud. Not only is the requirement reasonable, but it is necessary.

We have examined the cases cited by appellee Cohn [5] but find none contrary to the view we here express. Mikeska v. United States, 1948, —— U.S.App.D.C. ——, 171 F.2d 153, is in accord.

We are constrained to speak a word of warning concerning the cases of which this is one, and of which so many seem to be appearing in the courts. On the one hand, it is highly desirable that the wishes of servicemen in respect to their insurance be observed, and the courts should be diligent to that end, disregarding mere technicalities and formalities of all sorts. But, on the other hand, it is equally important that the door not be opened to the enormous frauds obviously latent in the situation if basic minima of proof be disregarded. In the present case, the deceased officer had been married ten months when he was killed. There was testimony that the wife and her family were "all well off", whereas the deceased's father and mother were "in kind of hard circumstances", the father working on a beer truck. There was also testimony that Cohn had said to his father that "although they have been putting a lot of pressure on me to have this transferred into Helene's name, but I think I personally want it for you and mother in case some-

---

[1] There is a startling misquotation in appellee wife's brief in connection with this officer's testimony. The brief says (p. 6, lines 24-26): "And on still another occasion the insured told this witness 'If anything happened, Helene (appellee) would have the $10,000.'" The testimony of the witness was (App. p. 18, lines 15-16): " * * * and I said, 'If anything happened, Helene would have the $10,000,' * * *." The actual remark was made by the witness to Cohn, not by Cohn to the witness.

[2] Tayloe v. Riggs, 1828, 1 Pet. 591, 7 L.Ed. 275; Nu Car Carriers v. Traynor, 1942, 75 U.S.App.D.C. 174, 125 F.2d 47;

[4] Wigmore, Evidence, § 1278 (3d Ed. 1940).

[3] 38 Code Fed. Regs. § 10.3447 (Cum. Supp.), 7 Fed. Reg. 8364 (1942), as amended, 38 Code Fed.Regs. § 10.3447 (Supp. 1946), 11 Fed. Reg. 9283 (1946).

[4] Mitchell v. United States, 5 Cir., 1948, 165 F.2d 758; Roberts v. United States, 4 Cir., 1946, 157 F.2d 906; Bradley v. United States, 10 Cir., 1944, 143 F.2d 573; Peart v. Chaze, D.C.W.D.La., 1926, 13 F.2d 908.

[5] Cases cited note 4 supra and others such as Shapiro v United States, 2 Cir., 1948, 166 F.2d 240; Gann v. Meek, 5 Cir., 1948, 165 F.2d 857; and McKewen v. McKewen, 5 Cir., 1948, 165 F.2d 761.

thing does happen to me". There is no scrap of writing, either presented or described orally, which shows that the deceased ever changed the beneficiaries named on his policy. We are struck by the loose use of "beneficiary" and "beneficiary slip" throughout the case, as though those terms always referred to life insurance. They do not and did not. As the testimony shows, these officers made out so-called "beneficiary slips" every time they changed organizations, which forms called for data as to dependents, wife, children, and next of kin. This data was for use under the act (May 22, 1928, extended March 17, 1941, 1941) which provided six months' pay to the widow, children, or dependent relative of a deceased serviceman. The testimony of the key witness for the wife in this case indicated that when he and Cohn went to the disbursing officer on the occasion when Cohn is supposed to have changed the beneficiary of his insurance policy, the forms requested and received by the witness and Cohn were of this other type and were not related to life insurance. The witness said that he asked for "beneficiary blanks" and that "I- made mine as I always do". There was no periodic redesignation of beneficiaries on life insurance policies.

Appellee suggests that a "beneficiary slip" executed by this decedent was a change in the beneficiary of his life insurance. The form called for the name and address of the officer's wife; they were so entered. The form, in terms, related to the six months' pay allowance to a widow. No testimony explanatory of or relating to the document was proffered. The suggestion that it be deemed to be a change in the beneficiary of life insurance is so preposterous as to throw doubt upon the sincerity of the suggester. In Rosenschein v. Citron,[6] there was testimony that the de-cedent requested from his finance officer a form for changing the beneficiary of his life insurance; that in response he was given a form, later proffered in evidence in that case; that that form did not refer expressly to any particular benefits; and that he executed that particular document for the particular purpose of changing his life insurance beneficiary. In the case at bar, nobody testified that the form was intended to be other than what it was.

Moreover, we are impressed by the insistent part played by the key witness for appellee Cohn in this whole matter. He testified "I had often talked to Herbie [Cohn] about changing his insurance"; "I told Herbie if he was going to change it now would be a darned good time to do it"; and "I got the blanks and gave him one and kept one." And then there is the statement to which we have referred in note 1, supra. Again this witness testified that upon one occasion when Cohn, late for a flight, handed him a "confidential sheet" (indicating the desired disposition of effects) "and asked me to put it in the envelope, which I did," he (the witness) "checked the sheet to see if he had signed it", and "It named Helene Cohn as the beneficiary for all purposes." All these circumstances create an atmosphere which illustrates the necessity that any change in the formally designated beneficiaries of these policies be evidenced by some unmistakable proof that the decedent did actually make the change. The reasonable and, in our view, necessary proof is a writing, which, if not currently existing, should be proved by the well-established rules for making such proof.

The judgment of the District Court will be reversed and the case remanded with directions to enter judgment for the defendants.

Reversed.

---

[6] 1948, 83 U.S.App.D.C 346, 169 F.2d 885.