EMPIRE GENERAL LIFE INSURANCE
COMPANY, an Alabama corporation, Plaintiff,

v.

Morris L. SILVERMAN, Defendant-Appellant and
Cross-Respondent-Petitioner,

Sophia DOUCAS and Doucas Oldsmobile-Renault,
Inc., a Wisconsin corporation, Defendants-
Respondents and Cross-Appellants. †

Supreme Court

*No. 84–1816. Argued November 24, 1986.—Decided January 30,
1987.*

(Also reported in 399 N.W.2d 910.)

† Motion for reconsideration denied.

143

144

For the defendant-appellant and cross-respondent-petitioner there was a brief by *Scott B. Fleming, Thomas L. Skalmoski* and *Weiss, Berzowski, Brady & Donahue*, Milwaukee, and oral argument by *Scott B. Fleming*.

For the defendants-respondents and cross-appellants there was a brief by *Thomas W. St. John* and *Friebert, Finerty & St. John, S.C.*, Milwaukee, and oral argument by *Thomas W. St. John*.

LOUIS J. CECI, J.   This is a review of a decision of the court of appeals,[1] affirming the judgment of the Milwaukee county circuit court, Judge Robert W. Landry, which declared that Doucas Oldsmobile-Renault was the beneficiary of an insurance policy issued by

---

[1] *Empire Gen. Life Ins. Co. v. Silverman*, 127 Wis. 2d 270, 379 N.W.2d 853 (Ct. App. 1985).

Empire General Life Insurance Company on the life of Paul Doucas. In this appeal, we are called upon for the first time to construe sec. 632.48(1)(b), Stats., which governs beneficiary changes in life insurance policies.[2] Specifically, the issue before the court is whether Paul Doucas (Paul) made an effective beneficiary change under sec. 632.48(1)(b) from Morris L. Silverman (Silverman) to Doucas Oldsmobile-Renault (Doucas Olds) when he gave oral instructions to his attorney to change the beneficiary on his life insurance policy but failed to specifically designate a new beneficiary other than to tell his attorney that he wanted the policy proceeds to "go for the benefit of my family," and when he died before the change of beneficiary forms were completed and before the identity of the new beneficiary was specifically ascertained.

We hold that decedent's actions were sufficiently indicative of an unequivocal intent to remove Silverman as beneficiary under the policy, such that the require-

---

[2] The relevant portion of the statute provides as follows:

"*Designation of beneficiary.* (1) *Powers of policyholders.* Subject to s. 632.47(2), no life insurance policy or annuity contract may restrict the right of a policyholder or certificate holder:

" . . .

"(b) *Change of Beneficiary.* If the designation of beneficiary is not explicitly irrevocable, to change the beneficiary without the consent of the previously designated beneficiary. Subject to s. 853.17, as between the beneficiaries, any act that unequivocally indicates an intention to make the change is sufficient to effect it."

Committee Comment, 1975: "This provision states the preferable common law positions on a variety of problems, although it is not followed in all details in every jurisdiction. It is not intended to declare Wisconsin common law but to state a new point of departure for case law. The insurer is protected from the risk of double payment if it pays the properly designated beneficiary before it has notice of a change under sub. (1)(b)."

ments of sec. 632.48(1)(b) were satisfied. However, we decline to hold that Paul's actions were sufficiently precise to indicate that he unambiguously intended the policy proceeds to go either to any specific member or members of his family or to the family-owned corporation, Doucas Olds. As such, Silverman is removed as the policy beneficiary by operation of law, but because no specific substitute beneficiary designation was made, we turn to the terms of the life insurance policy itself to determine who should benefit from the proceeds. Under the policy terms, the proceeds should go to the original owner of the policy, Doucas Olds. While the result we reach comports with the findings of both the trial and appellate courts, we reach it utilizing a different analysis than that used by the lower courts. We now turn to the facts of this case.

The facts are not in dispute. Paul Doucas was president and sole shareholder of Doucas Olds, a car dealership located in Milwaukee. In 1978, Paul hired Silverman, pursuant to a written employment contract, to serve as the dealership's comptroller. The terms of the employment contract ran from May 1, 1978, to December 31, 1980, but Silverman continued his employment with Doucas Olds after the contract's expiration date.

Before the employment contract expired, Paul arranged for Doucas Olds to purchase an insurance policy on his life from Empire General Life Insurance Company (Empire General) in the amount of $200,000. Silverman was the named beneficiary of this policy, which was issued on July 8, 1980. This policy did not originally designate an owner; however, on October 30, 1980, the policy was amended to name Doucas Olds as

owner. Both Paul and Silverman signed the policy amendment.

After Silverman's employment contract expired, he entered into negotiations for a new employment contract. These negotiations included discussions between Silverman and Paul regarding certain stock transfers as well as a corporate reorganization of Doucas Olds. Silverman apparently was to play an integral part in the proposed corporate reorganization, as he would have an ownership interest in the new Doucas Olds corporate entity. Silverman and Paul preliminarily agreed that Silverman's equity interest in the dealership would be $100,000 and that the proceeds of the $200,000 policy would be reduced to $100,000 to reflect the interest he would be purchasing. No final agreement, either with regard to the employment contract terms or the stock purchase or reorganization plans, was ever reached and Silverman refused to make any changes in the $200,000 insurance policy until the employment contract, stock transfer provisions, and corporate reorganization plans were completed and finalized. Paul had on several occasions asked Silverman to waive or assign $100,000 of the face amount of the policy to the corporation. Each time the request was made, Silverman refused.

During the entire negotiations period, Paul mistakenly believed that Silverman, rather than Doucas Olds, owned the policy. Paul apparently held onto this belief despite the fact that he had earlier signed the policy amendment which specifically designated the car dealership as policy owner.

On November 9, 1981, Paul was admitted to the hospital for treatment related to colon cancer. At this time, Paul informed his attorney, Richard J. Bliss, that he wanted the policy proceeds to go for the benefit of his

148

family, rather than to Silverman.[3] He instructed Bliss to take all steps necessary to effectuate this change.

Attorney Bliss, also apparently under the mistaken impression that Silverman owned the policy, proceeded to attempt to accomplish the requested change. He called Robert Thoms (Thoms), the agent who originally issued the policy, to confirm ownership. Thoms incorrectly reconfirmed Bliss's belief that Silverman was indeed the policy owner. Bliss then informed Paul that because Silverman was the owner, he would have to approve either an ownership or a beneficiary change.[4] Paul reiterated his instruction to Bliss to see to it that his family would benefit from the policy proceeds and asked Bliss to obtain the necessary forms. Bliss called Thoms to request the forms, but Thoms stated that they would not be available until the following morning.

The next morning, November 10, 1981, Thoms discovered that Doucas Olds owned the policy. Thoms

---

[3] Paul's instructions were no more specific than this. The trial court specifically found that "[Paul] did not say that he wanted to leave his policy to his wife according to the testimony. He did not say that he wanted to leave it to his corporation. He did not say he wanted to leave it to his children. The only testimony before this Court is that he said he wanted to leave it for the benefit of his family." The trial court further found that Bliss interpreted Paul's instructions to mean that he should act in Paul's best interests in designating a new beneficiary. Bliss apparently believed that tax considerations warranted naming Doucas Olds, rather than any specific family member, as beneficiary, because to do so would best fulfill Paul's request.

[4] Bliss did ask Silverman to assign the policy proceeds to Doucas Olds or to consent to a beneficiary change. Silverman refused. It is unclear exactly when in the sequence of events on November 9 this request was made.

immediately relayed this information to Bliss and informed him that as sole shareholder and officer of Doucas Olds, Paul had the power to change the beneficiary on Doucas Olds' behalf. However, Thoms' efforts came too late. Paul died before the beneficiary change forms could be obtained and completed.

Subsequent to Paul's death, both Silverman and Sophia Doucas, Paul's widow, submitted claims to Empire General for the policy proceeds. The insurance company then instituted this action, naming Silverman, Paul's widow, and Doucas Olds as defendants. Empire General later admitted liability under the policy, and the policy proceeds were paid into the court. The lawsuit then proceeded as an interpleader action as between the defendants.

The trial court held that Paul unequivocally intended to make a change of beneficiary from Silverman to his own family. The court was persuaded that Paul's statement to Bliss that he wanted his "family" to benefit under the policy was sufficiently precise so as to designate whom Paul intended the beneficiary to be.

The appeals court affirmed the trial court decision, finding that Paul's instructions to Attorney Bliss both left no doubt as to his intent and constituted an "act" within the meaning of the statute. The appeals court further stated that cases requiring "substantial compliance" with policy rules governing beneficiary changes were of "questionable value" given the fact that the committee comment to sec. 632.48(1)(b), Stats., stated that that statutory section was to be a "new point of departure" in Wisconsin jurisprudence, thus shifting the focus from the nature of the insured's act to the certainty of the insured's intent to effect a beneficiary

change. The appeals court also agreed with the trial court's finding that the designation of Paul's "family" as beneficiary was sufficient under the statute.

We have often repeated the familiar rules of statutory construction by which we are bound. The first rule is that the primary source of statutory construction is the very language of the statute itself. *Kimberly-Clark Corp. v. Public Service Comm'n of Wisconsin,* 110 Wis. 2d 455, 462, 329 N.W.2d 143 (1983). If the language of the statute is clear on its face, we are precluded from referring to extrinsic sources to aid in our interpretation of that language. *Ball v. District No. 4, Area Board of Vocational, Technical & Adult Educ.,* 117 Wis. 2d 529, 538, 345 N.W.2d 389 (1984). However, if the language of the statute is sufficiently unclear or ambiguous so that it can evoke a variety of meanings, "this court will endeavor to ascertain the intent of the legislature as disclosed by the scope, history, context, subject matter and object of the statute." *Id.* Also, *see, Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 166, 361 N.W.2d 673 (1985), *Lukaszewicz v. Concrete Research, Inc.,* 43 Wis. 2d 335, 342, 168 N.W.2d 581 (1969). In any event, we must not interpret the statute in a manner which would be inconsistent with either its plain meaning or the legislative intent behind its enactment. *Lukaszewicz,* 43 Wis. 2d at 342.

The parties disagree on the proper interpretation of the words contained in the statute and on whether the statutory terms have been complied with in this case. Silverman argues that the statute embraces the common law in Wisconsin dealing with beneficiary changes and must be construed in light of it, as well as in light of case law in other jurisdictions. To support this assertion,

Silverman argues that the rules of statutory construction as well as the language of the committee comment itself compel an examination of relevant case law.[5] Silverman then embarks on an analysis of common law doctrines dealing with beneficiary changes in life insurance policies. Specifically, he discusses the competing strains of thought in this area, one requiring strict or literal compliance with beneficiary change provisions and rules in insurance policies, and the other requiring only substantial compliance. Silverman argues that the statute adopts substantial compliance principles and that the adoption of this theory signifies the "new point of departure for case law" in Wisconsin to which the committee comment refers.[6]

Utilizing substantial compliance analysis, Silverman argues that the minimum statutory requirements to effect a change in beneficiary are: (1) the specific designation of a new beneficiary such that no two individuals fit the same designation, (2) an intent to change the beneficiary to that new, specifically ascertainable beneficiary, (3) an affirmative act which unequivocally indicates an intent to change that beneficiary which the insured meant to be effective, and (4) reliable proof, such as a writing, to establish these elements.

---

[5] Silverman argues that the comment's assertion that the statute "states the preferable common law positions on a variety of problems ... " supports his conclusion that an examination of common law principles is in order and that the common law is the source of the statutory rule.

[6] That is, Silverman argues that prior law in Wisconsin adhered to the strict compliance doctrine and that the "preferred common law position" subsequent to the enactment of sec. 632.48(1)(b), Stats., is embodied in the substantial compliance doctrine.

The argument advanced by Doucas Olds and Paul's widow, Sophia, is that the law in Wisconsin prior to the adoption of sec. 632.48(1)(b), Stats., advanced substantial compliance principles and that the committee comment to the statute specifically and unambiguously indicated a departure from the substantial compliance doctrine. Therefore, because the legislative intent to deviate from existing principles was apparent, this court is not required to add to or subtract from the plain and unambiguous meaning of the statute and, indeed, is prohibited from doing so. Respondents argue that limiting ourselves to an examination of the words in the statute, it should be evident that Paul Doucas' instructions to his attorney to remove Silverman as beneficiary satisfied the statute's requirement that, in order to effectively change beneficiaries, the insured must perform "any act" which "unequivocally indicates an intention to make the change." Finally, respondents argue that no more, including a writing, is required and, furthermore, the informal designation by Paul that his "family" should benefit was sufficient under the statute.

We begin our analysis by surveying the case law in Wisconsin dealing with insurance policy beneficiary changes. Early cases quoted the strict compliance rule, which states that any beneficiary changes must be made as per the rules of the mutual benefit association and the terms of the insurance policy itself and that an attempted change will not be recognized if there is a deviation from the association rules or policy terms. *McGowan v. Supreme Court of Indep. Order of Foresters*, 104 Wis. 173, 180, 80 N.W. 603 (1899). *See also, Faubel v. Eckhart*, 151 Wis. 155, 159, 138 N.W. 615 (1912); *Suelflow v. Supreme Lodge, Knights & Ladies of*

153

*Honor*, 165 Wis. 291, 295, 162 N.W. 346 (1917); *Seffens v. Carisch*, 190 Wis. 144, 157, 208 N.W. 905 (1926). Significantly, however, even *McGowan*, the leading case in this area, recognized certain exceptions to its strict compliance rule, the most relevant of which allows a beneficiary change "where the insured has pursued the course required by the policy and the rules of the association, and done all in his power to make the change, but before the new certificate is actually issued he dies. . . . " 104 Wis. at 181. Under these circumstances, a court of equity would intervene to recognize the new, intended beneficiary to ensure that that which "ought to be done" is done. Thus, Silverman is incorrect in asserting that Wisconsin followed "pure" strict compliance principles prior to enactment of the statute. Instead, Wisconsin adhered to a strict compliance doctrine with certain recognized exceptions, amounting to, if not explicitly then implicitly, a substantial compliance analysis.[7]

Because Wisconsin case law establishes that the substantial compliance doctrine was already in effect prior to enactment of sec. 632.48(1)(b), Stats., it is erroneous for Silverman to argue, as he does, that the "point of departure" mentioned in the committee comment refers to a change from strict to substantial compliance principles. The "point of departure," instead, refers to a departure from substantial compliance principles. The plain meaning of the statute and its accompanying committee comment is the best source of support for our conclusion.

---

[7] The *McGowan* case itself supports this position, as it recognized the above exception and effectuated the insured's intent when it stated that "[t]he insured had done every substantial act required of him. . . . " 104 Wis. at 181. Other cases use the same or similar language. *See, Seffens*, 190 Wis. at 161.

The committee comment explicitly states that sec. 632.48(1)(b) is intended to "state a new point of departure for case law" in Wisconsin. That it has in fact done so is evident once we construe sec. 632.48(1)(b) in light of its statutory predecessor. The instant statutory section replaced sec. 208.10, Stats. (1973), which stated in part that "[a]ny member [of a mutual benefit society] may change his beneficiary without the consent of such beneficiary, by complying with the laws of the society." In contrast to the old statute, sec. 632.48(1)(b) contains no qualifying statements about the necessity of complying with either the rules of the insurance company or the terms of the policy. Nor does it limit itself by stating that a writing is required in order to effectuate a beneficiary change; rather it uses the general phrase "any act" and indicates in addition that the insured's intent is to be significant to a determination of whether a beneficiary change should be recognized.

Because sec. 632.48(1)(b) explicitly divorces itself from common law analysis, we agree with Doucas Olds and Sophia Doucas that Silverman's further reliance on common law from other jurisdictions is misplaced. Silverman relies heavily on a line of cases known as the National Service Life Insurance cases (NSLI cases), which typically involve policies issued to servicemen who allegedly changed beneficiaries on their government-provided life insurance policies while in military service or combat. Silverman relies on the NSLI cases for the proposition that an attempted beneficiary change will not be recognized unless there is some sort of writing, in whatever form, to indicate that the insured acted in a manner he or she deemed effective to accomplish that change. In addition to this requirement, the NSLI cases state that there must be some "persuasive

155

indication of an intent" on the part of the insured to make the change. *Bratcher v. United States*, 205 F.2d 953 (8th Cir. 1953). The requirement that there be some probative evidence of intent eliminates the possibility that a court will sanction a beneficiary change based merely on speculation or guesswork. *Id.* at 956. Concededly, the requirement that there be a writing in order to effect a beneficiary change places a burden on the insured servicemen and may, in some cases, seem to frustrate an uncompleted attempt to change beneficiaries. To prevent any such frustration of the insured's intentions and wishes, "mere technicalities and formalities" are to be ignored, and the exact form of the writing indicating the beneficiary change is to be considered immaterial. *Cohn v. Cohn*, 171 F.2d 828, 829 (D.C. Cir. 1948). A relaxation of the beneficiary change rules in the NSLI context is due to "the circumstances under which men in the service under war conditions must transact their affairs." *Farmakis v. Farmakis*, 172 F.2d 291, 292 (D.C. Cir. 1949). *See also, Ward v. United States*, 371 F.2d 108, 110 (7th Cir. 1966).

It is evident to us that any reliance on the NSLI cases is inappropriate, not only because of the "point of departure" from common law signified by sec. 632.48(1)(b), but also because, as argued by Doucas Olds and Sophia Doucas, that line of cases is easily distinguishable from the case at bar and cases like it. The NSLI cases deal with peculiar fact patterns, involving an area where the potential for fraud is especially evident and where, consequently, the need for some sort of writing, however incomplete or in whatever form, is especially acute. *Cohn*, 171 F.2d at 829.

Because Silverman's reliance on the NSLI cases for the proposition that a writing is required is misplaced and given that the statute does not explicitly require one, we hold that Paul Doucas' informal designation of "his family" as substituted policy beneficiaries cannot be invalidated solely on the basis that the attempted beneficiary change was not memorialized in writing. Instead, the statute indicates to us that the focus of our inquiry should be on whether the insured has performed some act which unequivocally indicates an intent to change policy beneficiaries, sufficient to effect that change. Section 632.48(1)(b), Stats.

We hold that, under the facts of this case, Paul Doucas did perform an act which unequivocally indicated an intent to remove Silverman as beneficiary. Paul instructed his attorney to undertake the steps necessary to effectuate the beneficiary change, and we find that this was sufficient to constitute an "act" within the meaning of sec. 632.48(1)(b). Paul did not merely inform Bliss that he wished his family to benefit from the proceeds of the policy; rather, he affirmatively told Bliss to take immediate steps to ensure that his family would benefit from the policy proceeds. After Bliss was incorrectly informed that Silverman owned the policy and that Silverman's permission would be required in order to finalize a beneficiary change, Paul nevertheless again instructed Bliss to see to it that the desired change was made. Bliss was attempting to comply with his client's wishes up until Paul's death. His behavior indicates that he understood Paul's statement to be an instruction to effectuate the beneficiary change. He requested the necessary forms, called Thoms to reconfirm ownership, and

157

contacted Silverman to request his consent to a beneficiary change. Had Bliss learned sooner that Paul was the actual owner of the policy, there seems to be no doubt that, given his attempts to adhere to his client's instructions, he would have promptly presented the forms to Paul for his signature. Paul died before he had the chance to formally approve the beneficiary change. This, however, does not mean that he did not intend his act of instructing Bliss to remove Silverman as beneficiary to be effective.

Where, as here, a policyholder performs an act, such as instructing his or her attorney to take steps to finalize a desired beneficiary change, and that act unequivocally indicates an intent to make that change, the terms of the statute are satisfied. The only allowable inference in this case, given the facts and circumstances, is that Paul intended to remove Silverman as beneficiary and that he intended to substitute another individual or entity as beneficiary. Paul did not equivocate in his desire to remove Silverman as beneficiary. As long as there is no room for doubt as to the insured's intent, and there is none here, we need not place undue emphasis on the nature of the act performed by the policyholder. The statute itself states that "any" act will be sufficient provided the intent is evident.

Because there is only one inference under the facts of this case and that is that Paul's actions unequivocally indicated an intent to remove Silverman as beneficiary, we will recognize Paul's attempt to remove Silverman as beneficiary. We wish to make clear that where there is more than one possible inference as to the insured's intent, we will not engage in the speculative exercise of determining what the real intent was. Under those circumstances, not present here, we would refuse to recog-

nize the attempt to remove the named individual as beneficiary.

Our inquiry does not stop here. Even though we recognize the attempt by Paul to remove Silverman as beneficiary, we hold that his general designation of "his family" as intended substitute beneficiary was so vague that we are precluded from recognizing it. The word "family" may not necessarily represent a self-contained unit. In this case, only one family member, Paul's widow, has submitted a claim to the policy proceeds. Nevertheless, we can easily conceive of the situation where a panoply of individuals, ranging from offspring to siblings to distant cousins, may submit claims as "family" members. A reviewing court under those circumstances would be compelled to draw seemingly arbitrary lines and engage in pure speculation in order to determine which members of the "family" the policyholder most likely intended to benefit.

Paul did not make the designation with the requisite specificity. He did not state that the policy should benefit "my car dealership" or "my wife, Sophia" or any other specific individual or entity. Absent such a specific designation, we must turn to the terms of the insurance policy itself to determine, once Silverman is removed as beneficiary by operation of law, who should receive the policy proceeds.

The policy issued on Paul's life was introduced at trial as plaintiff's exhibit 10. Page three contains a paragraph entitled, "Beneficiary Provisions," which contains the following sentence which we believe is dispositive: "If the interest of all designated beneficiaries has terminated, any proceeds payable because of the death of the

Insured will be paid to the then owner of this policy, if living, otherwise to the executor or administrator of the owner." The owner of the policy at Paul's death was Doucas Olds. Therefore, we reach the result advanced by Doucas Olds and Sophia Doucas, finding that Doucas Olds is the beneficiary of the policy, but we do so under the terms of the policy, rather than by holding that Paul's informal designation of his family as beneficiary was sufficiently precise. As such, we affirm the result reached by the court of appeals, but as modified by our decision.

*By the Court.*—The decision of the court of appeals is modified and, as modified, affirmed.