WALDUM, Respondent, vs. HOMSTAD, Administrator, Appellant.

*September 29—October 20, 1903.*

*Insurance: Benefit societies: Change of beneficiary: Custom: Change not formally completed before death.*

Nothing in the constitution, by-laws, rules, or regulations of a mutual benefit society in any manner provided for or restricted the right of a member to change the beneficiary named in his certificate; but it was customary to make such a change at the request of the member upon his surrendering the old certificate and paying a small fee.  A member, knowing such custom, wrote to the grand secretary of the society, asking him to change the beneficiary named in his certificate, and was by said officer informed that he must give the certificate and fee to the local secretary, who would forward them to the grand secretary, and the new certificate would be issued. This direction was fully complied with by the member ten days before his death, but the local secretary failed to forward the certificate or fee to the grand secretary, and the new certificate was never issued. *Held* that, as the insured had done all that he was required to do, and only formal, ministerial acts remained to be performed by officers of the society, the change of beneficiary must be deemed complete.

APPEAL from a judgment of the circuit court for Jackson county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

This action was commenced to recover $950 life insurance under a certificate issued by the Independent Scandinavian Workingmen's Association to one Elias Sklet, payable to his estate. It appears from the record and is undisputed or found by the court, in effect, that the Grand Lodge of such association is the governing body, and is authorized to issue certificates to persons who become members thereof on the mutual assessment plan, entitling such members to participate in the beneficial fund of the order to the amount specified in such certificates; that January 13, 1900, Elias Sklet, since deceased, became a member of such association by initiation in Nora Branch No. 10 of the order, and had a certificate issued to him to the amount of $1,000, payable at his death to his estate; that up to the time of his death he paid all sums necessary or required of him to be paid, and was at the time of his death in good standing with the order; that there were no provisions of any kind in the constitution, by-laws, rules, or regulations of the order in any manner providing for or restricting the right of persons insured therein to change the beneficiary by them named in their certificate of insurance; that ever since the organization of the association it had been customary to change the beneficiary at the pleasure of the insured by surrendering the old certificate and the payment of a fee of fifty cents, and a request to have the beneficiary changed to some other person than that named therein, and that Elias Sklet knew that such was the custom and had such custom in mind before his death.

Sklet was a laboring man, and made his home with the plaintiff, who kept a boarding house, and to whom he paid his board when he had the money, but when he had none he was cared for by the plaintiff just the same. He had no relatives in this country, but had two sisters in Norway, whom he seldom heard from. Sklet came to the home of the plaintiff Sun-

day evening September 15, 1901, sick with typhoid fever, and took to his bed, and died September 29, 1901. One Dr. Krohn attended to him during his illness and while so attending him, and on Monday, September 16, 1901, Sklet spoke to him about his insurance, and on the following day directed Dr. Krohn to write a letter to P. J. Smith, the grand secretary of the order, to change the beneficiary named in his policy from his estate to the plaintiff, which letter was written and signed by the deceased on that day. P. J. Smith wrote a letter in answer thereto on Wednesday, September 18, 1901, directing Sklet to send his old policy to one H. A. Johnson, together with fifty cents, and that he could then get a new policy from him. On the same day Sklet gave the letter from Smith, together with his old certificate and fifty cents, to Dr. Krohn, and requested him to take the same to the local secretary, H. A. Johnson, for the purpose of having the beneficiary changed as directed, which the doctor did by handing to Johnson, the next day (Thursday, September 19, 1901), the letter, the old certificate, and the fifty cents, stating that Sklet wanted a new policy and the beneficiary changed from his estate to the plaintiff; and that Johnson took the letter, the certificate, and the fifty cents, and kept them from that time to the date of the trial, and neglected to send them to the grand secretary of the order, and so prevented the change from being made, as it would have been had he observed such request. On Friday, September 20, 1901, Dr. Krohn informed Sklet that the local secretary, Mr. Johnson, had not complied with the request, but Sklet said that it was all right, and that Krohn had done just as he wanted him to do. On that same day the local secretary wrote the president of the order, stating that application had been made to change the beneficiary, but omitted to inform the president that a written, formal application had been made, or that the old certificate and fifty cents had been delivered to him with a request to make the change. The president answered the local

secretary, and made objections to the manner in which an attempt to so change the beneficiary had been made, and advised the local secretary not to do anything with the matter until further instructions. From Saturday, September 21, 1901, until the date of his death, September 29, 1901, Sklet was delirious, and nothing more was done towards changing the beneficiary named in the certificate.

On October 5, 1901, proofs of the death of Sklet were made by the officers of Nora Branch No. 10 of the order. October 7, 1901, the plaintiff notified the Independent Scandinavian Workingmen's Association and the grand lodge that she was the beneficiary under such certificate and was entitled to the money payable thereunder, and she thereupon filed a verified and formal claim therefor. Under the by-laws of the order, when a member dies who has no family, the branch lodge to which he belongs at the time of his death attends to and pays the expenses of his funeral and burial, which the Nora Branch No. 10 did, amounting to $50, which amount was deducted from the $1,000 payable under the certificate.

On November 20, 1901, the defendant, *Elias A. Homstad,* was appointed special administrator of the estate of Sklet, deceased, and on the same day he demanded of the order the amount payable under the insurance certificate, which was refused on the ground that the plaintiff also claimed the same, and no payment thereof would be made to any one until determined by the court. December 31, 1901, this action was commenced by the plaintiff against the association to recover the $950. January 7, 1902, the defendant, *Elias A. Homstad,* was appointed administrator of the estate of the deceased, and duly qualified as such, and on the same day he demanded of the order the amount payable under the insurance certificate, which was refused, and thereupon such administrator began an action in the circuit court against said association, which action is still pending under a stay of proceedings by order of the circuit court. January 29, 1902, the

court ordered the association to pay the money into court, which it thereupon did.

The court finds that Sklet was of sound and disposing mind and memory up to and including Friday, September 20, 1901, and in all respects mentally competent to make a change of beneficiaries in his certificate in such order; that he pursued the course required by his policy and the rules and customs of the order, and fully complied with the written direction of the grand secretary of the order, and did all in his power to so change the beneficiary in his certificate from his estate to the plaintiff; and that the only things remaining to be done were the formal acts on the part of the association, concerning the doing of which it had no discretion, but must act as directed by Sklet. As conclusions of law the court found that September 19, 1901, Sklet changed the beneficiary named in his certificate from his estate to the plaintiff; that December 5, 1901, the plaintiff was entitled to receive the amount of such certificate, $950; that the plaintiff is entitled to judgment in the amount of $950, together with costs and disbursements in this action, to be taxed against the defendant, *Elias A. Homstad,* as administrator of said estate. From the judgment entered thereon accordingly the defendant, *Elias A. Homstad,* appeals.

For the appellant there was a brief by *Pope & Pope,* and oral argument by *Carl C. Pope.* The contended, *inter alia,* that where the rules and regulations of an association provide for the manner of change in beneficiaries, and the assured has pursued such rules and done all things required by them to entitle him to a change, if he dies before a new certificate is issued equity will treat the change as having been made. *Luhrs v. Luhrs,* 123 N. Y. 367; *Supreme Conclave R. A. v. Cappella,* 41 Fed. 1; *McGowan v. Ind. Order of Foresters,* 104 Wis. 173, 181; *Berg v. Damkoehler,* 112 Wis. 587, 590. But in the case at bar the contract of insurance had "no provision of any kind or nature in any manner providing for the

right of a person insured therein to change the beneficiary."
The fact that the insured did all in his power to have, his con-
tract of insurance changed before his death, in the absence
of all rules upon the subject, does not change the contract.
There would have to be a new contract between the insured
and the association in order to create a new and specific bene-
ficiary. *Alvord v. Luckenbach,* 106 Wis. 537, 539; *Elgar. v.
Equitable L. Ins. Soc.* 113 Wis. 90, 93; *Stoll v. Mut. Ben. L.
Ins. Co.* 115 Wis. 558, 92 N. W. 277; *Berg v. Damkoehler,*
112 Wis. 587, 590.

For the respondent there was a brief by *Frawley, Bundy &
Wilcox,* and oral argument by *C. T. Wilcox.*

CASSODAY, C. J. There is no bill of exceptions. The facts
are all found by the court, and of course are undisputed. It
stands admitted that the association was authorized to issue
certificates to its members, according to its constitution, by-
laws, and rules, on the mutual assessment plan, entitling such
members to participate in the beneficial fund of the order for
the amount specified in such certificate. Such was the cer-
tificate in the case at bar, issued by the association to the de-
ceased, Elias Sklet, and payable at his death to his estate.
The question presented is whether, from the facts found, the
deceased succeeded in changing the beneficiary from his es-
tate, named in his certificate, to the plaintiff in this action.
Twelve days before his death he wrote to the grand secretary
of the association requesting him to change the beneficiary
in his policy from his estate to the plaintiff in this action,
giving his reasons therefor, and requesting prompt attention.
The next day the grand secretary wrote to the deceased to the
effect that, in order to get his policy changed, he must give
the old policy and fifty cents to his local secretary, therein
named, and that such local secretary would then forward the
same to him, the grand secretary, and that the deceased would
then get a new policy from him. It is undisputed that ten

days before Sklet died he fully complied with such direction of the grand secretary. The contention is that the attempted change of the beneficiary was ineffectual, because the local secretary never forwarded the old certificate or the fifty cents to the grand secretary. There is no claim nor pretense that the grand secretary did not have authority to receive the old certificate and the fifty cents and change the beneficiary, as requested by the deceased twelve days before his death. That he had such authority is manifest from the findings. Having such authority, it was competent for him to direct the deceased, as he did, to deliver the certificate and fifty cents to the local secretary, instead of himself. Having given such direction, and the same having been fully complied with by the deceased, the transaction was the same, in legal contemplation, as though the deceased had delivered the certificate and the fifty cents to the grand secretary personally, and requested him to make such change. In his letter giving such direction the grand secretary informed the deceased that upon his compliance with such direction he would get a new policy from him, the grand secretary. It is found that there is nothing in the constitution, by-laws, rules, or regulations of the order restricting the right of members to make such change. There is nothing in the statutes to prevent such change. On the contrary, the statute expressly declares that:

"Any member may change the beneficiary named in his certificate or policy without the consent of such beneficiary, by complying with the by-laws of the society, order or association which issued the same." Sec. 1955c, Stats. 1898, as amended by ch. 101, Laws of 1899.

Since the right of members to make such change was not restricted by anything in the statutes, nor in the constitution, by-laws, rules, or regulations of the order, nor in the contract with the deceased, it is obvious that he was not precluded from making the change in the manner indicated merely because the association had not prescribed a different method for mak-

ing such change. The right of the assured to make such change, under similar circumstances, has frequently been recognized and sanctioned by this and other courts. *Rawson v. Milwaukee M. L. Ins. Co.* 115 Wis. 641, 646, 92 N. W. 378, and cases there cited. Thus it is held in Indiana that:

"Where a member of a benefit association has a right to change the beneficiary named in his certificate, and no prescribed mode of making the change is shown, an assignment of the certificate, with directions to the association to pay the proceeds to the assignee, effects a change." *Milner v. Bowman,* 119 Ind. 448, 21 N. E. 1094. See, also, Niblack, Ben. Soc. & Acc. Ins. §§ 212, 214.

The only remaining question is whether what was done by the deceased under the direction of the grand secretary had the effect to change or modify the contract. It is said by a learned text-writer that:

"When a member has done all that he is required to do under the contract to effect a change of beneficiaries, the change will be deemed complete, even though some ministerial acts of the officers of the society are still to be performed." Sec. 223, Niblack, Ben. Soc. & Acc. Ins.

This court has recently held that, where the insured has done every substantial act required of him, and dies before the new certificate is actually issued, and only formal acts on the part of the association remain to be performed, the change will be considered to have been made, even in an action at law. *McGowan v. Supreme Court I. O. F.* 104 Wis. 173, 80 N. W. 603; *Opitz v. Karel,* 118 Wis. 527, 95 N. W. 948. To the same effect, *Hirschl v. Clark,* 81 Iowa, 200, 47 N. W. 78, 9 L. R. A. 841; *Schmidt v. Iowa K. P. Ins. Asso.* 82 Iowa, 304, 47 N. W. 1032; *Carpenter v. Knapp,* 101 Iowa, 712, 70 N. W. 764. We must hold that the beneficiary was effectually changed from the estate of the deceased to the plaintiff.

*By the Court.*—The judgment of the circuit court is affirmed.