EMPIRE GENERAL LIFE INSURANCE COMPANY, an Alabama corporation, Plaintiff,

v.

Morris L. SILVERMAN, Defendant-Appellant and Cross-Respondent,

Sophia DOUCAS and Doucas Oldsmobile-Renault, Inc., a Wisconsin corporation, Defendants-Respondents and Cross-Appellants. †

Court of Appeals

*No. 84–1816. Submitted on briefs June 4, 1985.—Decided September 13, 1985.*
(Also reported in 379 N.W.2d 853.)

† Petition to review granted.

270

For the defendant-appellant and cross-respondent the cause was submitted on the briefs of *Weiss, Steuer, Berzowski, Brady & Donahue,* with *Scott B. Fleming* and *Thomas L. Skalmoski* of counsel, of Milwaukee.

For the defendants-respondents and cross-appellants the cause was submitted on the briefs of *Friebert, Finerty & St. John, S.C.,* with *Thomas W. St. John* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

SULLIVAN, J. Morris L. Silverman (Silverman) appeals from a judgment declaring that Doucas Oldsmobile-Renault, Inc. (Doucas Olds) is beneficiary of an insurance

policy issued by Empire General Life Insurance Company (Empire) on the life of Paul Doucas (Paul). Doucas Olds and Paul's widow, Sophia Doucas (Sophia), cross-appeal from that part of the judgment dismissing their cross-claim against Silverman for misrepresentation and breach of fiduciary duties. The issues are whether Paul performed an act that unequivocally indicated his intention to change the beneficiary under the subject policy from Silverman to Doucas Olds and, if so, whether Doucas Olds is equitably estopped from receiving the policy proceeds.

We hold as a matter of law that Paul effectively changed the beneficiary of the Empire policy from Silverman to Doucas Olds in accordance with sec. 632.48(1)(b), Stats. We also hold that there is no reason to overturn the trial court's conclusion that Silverman's cross-claim, asserting his right to the insurance proceeds on some contractual or equity theory, was insufficiently proved. Nor did the trial court err in dismissing the cross-claim of Sophia and Doucas Olds against Silverman, since it was conditioned on a finding that Silverman was the beneficiary. Thus, we affirm the trial court's judgment in all respects.

The facts, as follows, are not in dispute. Paul was president and sole shareholder of Doucas Olds, a car dealership. Doucas Olds hired Silverman pursuant to a written contract in 1978. By its terms, the contract expired at the end of 1980. During the contract period, Silverman purchased an insurance policy on Paul's life, with Paul's permission, from Old Line Life in the amount of $100,000. Silverman was the owner and beneficiary of the Old Line Life policy and he paid the premiums.

In October, 1980, Paul arranged for Doucas Olds to purchase a $200,000 insurance policy on his life from Empire naming Silverman as beneficiary. This policy, which is the subject matter of this suit, did not originally name an owner. The policy was amended about three weeks after issuance to name Doucas Olds as the owner. The

273

amendment was signed by both Paul and Silverman. Doucas Olds paid the premiums.

There was no express contract or policy provision preventing a change of beneficiary. As an officer and sole shareholder of Doucas Olds, Paul had the power to change the beneficiary on behalf of Doucas Olds. After the Empire policy was purchased, Silverman allowed his Old Line Life policy to lapse.

Silverman continued to work for Doucas Olds after his employment contract expired. He and Doucas Olds entered into negotiations for a new contract, including a corporate reorganization and stock purchase plan. Although no final agreement was reached, the parties apparently agreed that Silverman's right to the proceeds of the Empire policy would be reduced from $200,000 to $100,000 to reflect the amount of equity that he would be purchasing. Silverman refused to make any changes in the policy, however, until the reorganization was completed. During these negotiations and until his death, Paul believed that Silverman was the owner of the policy even though Paul had signed the amendment naming Doucas Olds the owner.

On November 9, 1981, Paul entered the hospital. That evening he spoke to his attorney, Richard J. Bliss, and told Bliss that he wanted the Empire policy to benefit the Doucas family. Bliss checked with Empire's agent, Robert L. Thomas, who confirmed incorrectly that Silverman was the owner of the policy. Bliss asked Silverman to sign over to Doucas Olds the policy or his rights to $100,000 of the proceeds, or to allow a beneficiary change. Silverman refused. Silverman either did not remember, or chose not to disclose, that Doucas Olds already owned the policy.

Upon hearing of Silverman's refusal, Paul instructed Bliss to take any necessary action to change the beneficiary from Silverman to the Doucas family, leaving it to Bliss to decide the specific designation of beneficiary that

would most benefit the family. Bliss and another Doucas family attorney decided that naming Doucas Olds would best benefit the family. Bliss instructed Thoms to send over the necessary forms, but Thoms could not do so that evening.

The next morning, Thoms discovered that Doucas Olds owned the policy and that, because Paul was an officer of the corporation, Paul had the authority to change the beneficiary. Thoms immediately notified Bliss of this fact, but Paul had died minutes earlier.

Both Sophia and Silverman submitted claims for the proceeds. Empire commenced this action naming Silverman, Sophia, and Doucas Olds as defendants.[1] Empire later admitted liability under the policy and paid the proceeds into court. It was then dismissed from the action, which proceeded as an interpleader between the defendants. After trial to the court, the court awarded the policy proceeds to Doucas Olds and dismissed all cross-claims as insufficiently proved.

In deciding that Doucas Olds was the proper beneficiary, the trial court relied on sec. 632.48(1)(b), Stats., which reads as follows:

> (1) . . . [N]o life insurance policy or annuity contract may restrict the right of a policyholder or certificate holder:
>
> . . .
>
> (b) *Change of beneficiary.* If the designation of beneficiary is not explicitly irrevocable, to change the beneficiary without the consent of the previously designated beneficiary. . . . [A]s between the beneficiaries, any act that unequivocally indicates an intention to make the change is sufficient to effect it.

The meaning of this statute has not been addressed by this court or the supreme court. Silverman argues that

---

[1] Empire also named Duane Cherek, a Doucas Olds employee who was the named beneficiary in a second Empire policy that is not relevant to this appeal.

Paul's conversations with his attorney merely stated his intention to make a change of beneficiary and did not constitute an act sufficient under sec. 632.48(1)(b), Stats., to effectuate a change in light of Wisconsin common law. Sophia and Doucas Olds, on the other hand, contend that Paul's instructions to his attorney to act on his behalf were sufficient under sec. 632.48(1)(b) to effect a beneficiary change. They also assert that the statute is a liberal departure from the common law. We agree with Sophia and Doucas Olds.

Generally, the question of intent is one to be determined by the trier of fact. *Household Utilities, Inc. v. Andrews Co.,* 71 Wis. 2d 17, 29, 236 N.W.2d 663, 669 (1976). Nevertheless, the application of a statute to a particular set of facts is a question of law. *Bucyrus-Erie Co. v. DILHR,* 90 Wis. 2d 408, 417, 280 N.W.2d 142, 146–47 (1979); *Bitters v. Milcut, Inc.,* 117 Wis. 2d 48, 49, 343 N.W.2d 418, 419 (Ct. App. 1983). The meaning of an unambiguous statute is also a question of law. *Breiby v. Department of Administration,* 55 Wis. 2d 16, 18, 197 N.W.2d 737, 738 (1972). Therefore, this court must make an independent decision without deference to the trial court's conclusions of law. *Ball v. District No. 4 Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

In construing a statute, the primary source is the language of the statute itself. *Kimberly-Clark Corporation v. Public Service Commission,* 110 Wis. 2d 455, 462, 329 N.W.2d 143, 146 (1983). When a statute is clear on its face, the court will not look outside of the language of the statute in applying it. *Wisconsin Electric Power Co. v. Public Service Commission,* 110 Wis. 2d 530, 534, 329 N.W.2d 178, 181 (1983); *see also Department of Transportation v. Transportation Commission,* 111 Wis. 2d 80, 87–88, 330 N.W.2d 159, 162 (1983) (absent ambiguity, court's duty is to give words their ordinary meaning without resort to

legislative history, rules of interpretation, or canons of construction).

Nevertheless, even though a statute is not ambiguous, a word may have a variety of meanings and its precise meaning must be found in its context and relation to the subject matter. *Lukaszewicz v. Concrete Research, Inc.,* 43 Wis. 2d 335, 342, 168 N.W.2d 581, 585 (1969). In this case, the parties disagree as to the precise meaning of the word "act" as it is used in sec. 632.48, Stats. ("any act that unequivocally indicates an intention to make the change" of beneficiary). For this reason, and because the primary goal in statutory construction is to give effect to legislative intent, *Barth v. Board of Education,* 108 Wis. 2d 511, 517, 322 N.W.2d 694, 697 (Ct. App. 1982), this court will look beyond the words of the statute itself.

Section 632.48, Stats., replaced sec. 208.10, Stats. (1973), which stated in part that "[a]ny member [of a mutual benefit society] may change his beneficiary without the consent of such beneficiary, by complying with the laws of the society." Wisconsin common law had long recognized that there need only be substantial, rather than strict, compliance with the benefit society's laws or insurance policy provisions for a beneficiary change to take effect. *See, e.g., Waldum v. Homstad,* 119 Wis. 312, 319, 96 N.W. 806, 809 (1903) (member did all necessary acts but died before beneficiary change was completed; change was regarded as made since only ministerial acts of benefit society remained).

The substantial compliance doctrine, followed in the majority of jurisdictions, states that when an insured has substantially complied with policy requirements for a beneficiary change by doing all in his or her power to conform to policy formalities, but dies before completion, the change will be deemed effective. 5 Couch on Insurance § 28:66 at 107–08 (M. Rhodes rev. 2d ed. 1984). The theory supporting the substantial compliance doctrine is that eq-

uity regards as done that which ought to be done. *Id.*
§ 28:65 at 104.

This equitable principle generally does not apply,
however, unless the insured has taken all steps possible
to effect the change. Thus, preliminary steps have been
held insufficient. *See id.* § 28:75 at 131 and cases cited
therein. Some jurisdictions require that the insured have
mailed in a formal application for a beneficiary change
to the insurer in order to have substantially complied. *See
id.* § 28:76 at 137 and cases cited therein. Regardless of
the specific acts found to be necessary or sufficient under
the substantial compliance doctrine, however, "[t]he es-
sential inquiry . . . is whether there has been a sufficient
expression of the insured's intent to change beneficiaries
so that effect should be given to it." *Cipriani v. Sun Life
Insurance Co.,* 581 F. Supp. 1222, 1224 (E.D. Pa. 1984) (cit-
ing *Prudential Insurance Co. v. Bannister,* 448 F. Supp.
807, 809 (W.D. Pa 1978)), *rev'd on other grounds,* 757 F.2d
78 (3d Cir. 1985); *see also Lemke v. Schwarz,* 286 N.W.2d
693, 696 (Minn. 1979) (where insured has clearly and un-
ambiguously demonstrated intent to change beneficiary,
intent should be given effect). *But see Duty v. Ignasiak,*
633 S.W.2d 654, 656 (Tex. App. 1982) (insured's intent not
at issue in determining substantial compliance).

A comprehensive survey of substantial compliance
cases appears in *Dooley v. James A. Dooley Associates,* 442
N.E.2d 222 (Ill. 1982). In *Dooley,* the Illinois Supreme
Court analyzed the substantial compliance cases and con-
cluded:

> In most of the reported cases the courts have not
> discussed the decedent's intent, but have dwelt upon
> whether he took sufficient steps to effectuate the
> change. It appears, however, that the overriding con-
> cern in these cases, the threshold question, is the firm-
> ness of decedent's intent as to the changes. Indeed,
> where the courts have been convinced that no doubt
> as to decedent's intent existed, that intent has been im-

plemented despite what would appear to be substantial noncompliance with formal requirements. However, where factors exist which tend to indicate some equivocation—to cast some doubt upon decedent's intent—the courts have generally held that the decedent did not substantially comply with all requirements, or did not do all he could to effectuate the change, or both.

*Id.* at 226 (citations omitted). The *Dooley* court recognized that the insured's intent, rather than a particular act or set of acts, should govern whether a court recognizes a beneficiary change as having occurred. Our legislature similarly recognized the paramount importance of the insured's intent by enacting sec. 632.48, Stats.

The language of sec. 208.10, Stats. (1973), requiring compliance with formalities gave way to the declaration in sec. 632.48 (1)(b), Stats., that "as between the beneficiaries, *any act* that unequivocally indicates an intention to make the change [of beneficiary] is sufficient to effect it." [Emphasis added.] The legislative committee note following sec. 632.48 explains that the new section "states the preferable common law positions on a variety of problems, although it is not followed in all details in every jurisdiction. *It is not intended to declare Wisconsin common law but to state a new point of departure for case law.*" Sec. 34, ch. 373, Laws of 1975 (emphasis added).

██ In light of the committee's comment that sec. 632.48, Stats., is a "new point of departure," prior Wisconsin cases and cases from other jurisdictions requiring substantial compliance are of questionable value in determining whether an act is sufficient under the statute to effect a beneficiary change. *See Metropolitan Life Insurance Co. v. Kwicinski,* 82 F.R.D. 445, 446 (E.D. Wis. 1979). We are not bound to require acts similar to those necessary for substantial compliance. Thus, while Silverman correctly states that sec. 632.48 "precludes giving legal effect to

vague oral statements subject to change or misrepresentation," he is incorrect in his assertion that the statute requires "some written document." The statute, as the trial court noted, means what it says: "any act" is sufficient to effectuate a beneficiary change if the act leaves no doubt as to the insured's intent. Any formalities required by the insurer are solely for the protection of the insurer. Sec. 632.48 (2). We may not read the words "any act" to mean "any writing" or, indeed, "any degree of compliance with policy formalities." The plain and obvious meaning of words is always preferred to any narrow or hidden sense. *A.O. Smith Corporation v. Department of Revenue,* 43 Wis. 2d 420, 429, 168 N.W.2d 887, 891 (1969).

Section 632.48, Stats., signals a significant departure from the substantial compliance doctrine by shifting the court's focus from the nature of the act to the certainty of the insured's intent. Nevertheless, it does not abandon the doctrine's underlying purpose of establishing the insured's intent. The requirement of some act as an unequivocal indication of intent serves to eliminate doubt as to the insured's intent and to provide concrete evidence of that intent. *See Dooley,* 442 N.E.2d at 227. We agree with the trial court that the statutory requirements have been met in this case.

The trial court noted that several witnesses gave undisputed testimony that Paul had "indicated that he wished to change the beneficiary from Mr. Silverman to his family." The only evidence presented at trial concerning the acts and intent of Paul Doucas on the night before he died was the testimony of his attorney, Bliss. Bliss gave uncontroverted testimony that Paul had instructed him to change beneficiaries in such a way as best to benefit the Doucas family. Bliss gave the following testimony regarding his second conversation with Paul that evening, after relating to him Thoms' misinformation regarding ownership of the policy: "He [Paul] instructed me to con-

280

tinue to put pressure on Mr. Thoms to get the documents prepared and delivered to us and to *take all steps necessary to get the changes put in place.*" [Emphasis added.] Bliss further testified that Paul specifically instructed him "to arrange to have the change of ownership and change of beneficiary put in place as promptly as possible." As a result of this conversation, Bliss called Silverman and requested him to authorize the changes. Bliss gave the following testimony regarding his last conversation with Paul that evening, after informing Paul that Silverman refused to sign over the policy or its proceeds:

> His last instruction was very emphatic. I was to do whatever I could to get those documents changed. He wanted the ownership changed so that he could get the beneficiary changed as well, and the beneficiary was to be changed so it would benefit his family in the way we thought best.

Instructing one's attorney to do something on one's behalf is an act. It is not merely a statement of one's intent to do something sometime in the future. Paul did not simply state that he wanted the insurance policy to benefit his family; rather, he authorized Bliss to do whatever was necessary to effect that result. Thus, in instructing his attorney, Paul performed an act or acts within the meaning of sec. 632.48(1)(b), Stats.

Moreover, Paul's acts in instructing his attorney unequivocally indicate Paul's intent to make a change of beneficiary. Neither party disputes that Paul's intent was to benefit the Doucas family rather than Silverman. Bliss's testimony supports this fact. There is no doubt that Paul wanted the policy to go to the benefit of his family.

Finally, Paul's informal designation of his family as the intended beneficiary was sufficient under the statute. Bliss had been his attorney for some time and was familiar with the personal and business finances of the Doucas family. Paul had every right to grant Bliss the discretion

to determine in his professional judgment which specific designation would best carry out Paul's intent to have his family benefit.

Thus, Paul's instructions to Bliss on the night before Paul died constituted acts that unequivocally indicated Paul's intent to change the beneficiary of the policy in question from Silverman to the Doucas family. Naming Doucas Olds as the new beneficiary was within the authority that Paul gave to Bliss. In accordance with sec. 632.48(1)(b), Stats., Paul's actions were sufficient as a matter of law to effect a change of beneficiary from Silverman to Doucas Olds.

Silverman further argues that even if there were sufficient acts under the statute to effect a beneficiary change, he is nonetheless entitled to the policy proceeds on the basis of equitable estoppel. Silverman pleaded equitable estoppel as an affirmative defense to a cross-claim brought by Sophia and Doucas Olds. The trial court implicitly rejected this affirmative defense in its holding that Doucas Olds was the proper beneficiary of the policy proceeds. Silverman, however, asserts that the trial court found facts sufficient to prove equitable estoppel as a matter of law. We hold that the trial court did not err in declining to estop Doucas Olds from receiving the proceeds.

The defense of equitable estoppel consists of action or nonaction, on the part of one against whom estoppel is asserted, that induces reliance thereon by the party asserting estoppel, either in action or nonaction, which is to his or her detriment. *Beane v. City of Sturgeon Bay,* 112 Wis. 2d 609, 620, 334 N.W.2d 235, 240 (1983). It is elementary that the reliance on the words or conduct of the other must be reasonable. *Id.* Our inquiry is limited to Silverman's alleged reasonable reliance.

The burden of proving the elements of estoppel is on the party asserting it. *Gabriel v. Gabriel,* 57 Wis. 2d 424,

428, 204 N.W.2d 494, 497 (1973). Whether facts proven are sufficient to constitute estoppel is a question of law properly before a court of review. *See J.H. Cohn & Co. v. American Appraisal Associates,* 628 F.2d 994, 1000 n.7 (7th Cir. 1980). Reasonableness is also a question of law. *Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983). Thus, this court need not defer to the trial court's determination. *Ball,* 117 Wis. 2d at 537, 345 N.W.2d at 394.

The actions on which Silverman allegedly relied for the purpose of estoppel were either Paul's representations that he would allow Silverman to purchase equity in Doucas Olds or Paul's purchase, through Doucas Olds, of the Empire policy naming Silverman as beneficiary. According to Silverman, he relied to his detriment by allowing his Old Line Life policy to lapse. Silverman further asserts that the trial court found his reliance to be reasonable.

The trial court mentioned that Paul "promised certain things to Morris Silverman and Morris Silverman acted accordingly." This certainly falls far short of a factual finding sufficient to support an estoppel. Any representations or "promises" made by Paul regarding Silverman's purchase of equity in Doucas Olds were made in conjunction with or in anticipation of negotiations after the expiration of Silverman's employment contract. At the time of Paul's death those negotiations were ongoing and had, so far, been unsuccessful. It was certainly not reasonable for Silverman to rely on anything said during or anticipating negotiations for a new contract. Moreover, if Silverman had relied on representations concerning his purchase of equity sometime in the future, his act of reliance was to *purchase* the Old Line Life policy, not to allow it to lapse. Therefore, such representations may not form the basis of an estoppel.

283

If Silverman relied on anything in allowing his Old Line Life policy to lapse, it was the corporation's purchase of the Empire policy naming him as beneficiary. In the words of the trial court, Silverman "opted to discontinue the [Old Line Life] policy, although he could have elected to maintain it if he wished to pay the quarterly premiums . . . ." The trial court then commented on Silverman's reasons for discontinuing his policy:

> His testimony seems to be reasonable in that in view of the fact that he was a beneficiary of a policy for $200,000 [the Empire policy], there was no purpose for him to keep a separate policy for $100,000 [the Old Line Life policy] and continue to pay the premiums when the premiums for the Empire General policy on the other hand were being paid by the corporation . . . .

The trial court referred to Silverman's testimony, not his reliance, as reasonable. If the trial court meant that Silverman's act of reliance was reasonable, it was in error. Silverman signed the amendment naming Doucas Olds the owner of the Empire policy. No express contract or policy provision made Silverman the irrevocable beneficiary of the Empire policy. There was, therefore, no reason for Silverman to assume that he could not be replaced as the beneficiary of the Empire policy. Nevertheless, he allowed to lapse the only policy in which he had a right to designate himself as beneficiary. By discontinuing his Old Line Life policy on Paul's life, Silverman gave up his power to prevent a beneficiary change. In exchange, he received the chance to make twice as much money, at no premium cost, if he were still the beneficiary when Paul died. Silverman did not reasonably rely to his detriment; he merely gambled and lost.

We hold that Paul Doucas effectively changed the beneficiary of the Empire policy from Silverman to Dou-

cas Olds. Silverman has failed to prove that Doucas Olds is equitably estopped from receiving the policy proceeds. Thus, we affirm the judgment of the trial court.

*By the Court.*—Judgment affirmed.